J-S56014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| THOMAS REYES | |
| Appellant | No. 2794 EDA 2016 |

Appeal from the Judgment of Sentence August 2, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001743-2016

BEFORE: BOWES, STABILE, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:           **FILED NOVEMBER 21, 2017**

Thomas Reyes appeals from the judgment of sentence of two and one-half to five years incarceration imposed following his convictions for contraband, possession with intent to deliver, and possession of implements of escape. We affirm.

On September 21, 2014, Lieutenant Antonio Olivarez, assigned to the internal security department at Graterford Prison, ordered an investigatory search of Appellant's jail cell. At approximately 12:55 p.m., Correctional Officers Jeffrey McCusker and Shane Cuddeback proceeded to Appellant's cell. At this time, the facility was "conducting count," a procedure where inmates are required to stand in their cells with the light on. Searches are conducted during the count process to guard against inmates alerting each

_____
* Retired Senior Judge specially assigned to the Superior Court.

other. At the time of the search, all inmates on Appellant's block were secured in their cells.

Officer Cuddeback made entry and observed Appellant, who was seated on the bottom bunk, drop an item on the left side of the bed. Officer Cuddeback, per procedure, placed handcuffs on Appellant in order to search the cell. Officer Cuddeback recovered a cell phone, which inmates are prohibited from possessing, in addition to two fingertips from latex gloves. Witnesses testified that fingertips are commonly severed from a glove in order to knot and package narcotics. The fingertips were opened and found to contain material that was subsequently sent for testing, which revealed that the item was synthetic marijuana, commonly referred to as K2. The items were recovered in close proximity to Appellant.

Lieutenant Olivarez explained that Appellant was continuously assigned to that particular cell since July 31, 2009, and last had a cellmate in February of 2014. Appellant's possession of contraband prompted Lieutenant Olivarez to begin monitoring Appellant's mail over the next year. The Commonwealth then introduced four letters, which generally made reference to the confiscation of the K2 and cell phone. These letters were sent on September 23, 24, and 30 of 2014 and April 9, 2015.

Charges were filed against Appellant on May 5, 2015. Trial commenced on July 13, 2016, and culminated in a guilty verdict. On August 2, 2016, the trial court imposed the aforementioned sentence. Appellant

filed a timely notice of appeal, and complied with the trial court's order to file a concise statement of matters complained of on appeal. The matter is ready for review of Appellant's two issues.

> I. Did the trial court erroneously deny Appellant's Rule 600 motion, where the Commonwealth failed to establish that it affirmatively acted with due diligence on the one occasion where it later argued for excusable delay?
>
> II. Did the trial court erroneously deny Appellant's motion in *limine* to exclude certain letters purportedly written by Appellant, where the Commonwealth's witness never saw Appellant write these letters or any other document and where that witness was not qualified to testify as an expert?

Appellant's brief at 5.

Appellant's first issue concerns an alleged failure of the Commonwealth to timely prosecute his case pursuant to Pennsylvania Rule of Criminal Procedure 600. Our standard and scope of review in evaluating Rule 600 issues is well-settled. We determine

> whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa.Super. 2013) (citing

*Commonwealth v. Ramos*, 936 A.2d 1097, 1099 (Pa.Super. 2007) (*en banc*) (alterations in original due to rule renumbering)).  "The proper application of discretion requires adherence to the law, and we exercise plenary review of legal questions."  *Commonwealth v. Baird*, 975 A.2d 1113, 1118 (Pa. 2009) (citing *Commonwealth v. Chamberlain*, 731 A.2d 593, 595 (Pa. 1999)).  Where the Commonwealth's due diligence is at issue, we apply the following principle:

> As has been oft stated, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."

*Commonwealth v. Bradford*, 46 A.3d 693, 701–02 (Pa. 2012) (quoting

*Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010)).

Rule 600, as rescinded and adopted July 1, 2013, requires the Commonwealth to try a defendant within one year of filing the complaint.  It provides:

(A) Commencement of Trial; Time for Trial

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

- 4 -

Pa.R.Crim.P. 600. Since the complaint was filed May 5, 2015, the Commonwealth was required to try Appellant on or before May 4, 2016.[1] Trial commenced on July 13, 2016, which exceeded the applicable 365-day period by seventy days. However, the mere fact that more than 365 days had elapsed does not automatically entitle Appellant to discharge. The Rule sets forth a particular method for calculating "the time within which trial must commence:"

> (C) Computation of Time
>
> (1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600. "[T]he inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence." Comment, Pa.R.Crim.P. 600.

Appellant's Rule 600 argument challenges the court's finding that the thirty-four-day period spanning July 24, 2015, to August 27, 2015, a delay caused by a rescheduling of Appellant's preliminary hearing, was not

---

[1] 2016 was a leap year.

included in the 365-day calculation. At the Rule 600 hearing, held on June 3, 2016, the Commonwealth called Tanya Scarafone, the clerk for Magisterial District Judge Augustine. She explained that Appellant's preliminary hearing was scheduled for July 24, 2015; however, the district judge was out of the office that day. As a result, the hearing was rescheduled for August 27, 2015. Appellant did not dispute that the Commonwealth was prepared to proceed on the July date.

We agree that this period of delay should be excluded in the Rule 600(C)(1) computation. Appellant asserts that this time period must be included as the Commonwealth failed to exercise due diligence by failing to find another magistrate who could preside over the case. In support, Appellant notes that Ms. Scarafone testified that obtaining coverage from other magistrates was possible. Therefore, Appellant argues that since another courtroom could have accommodated the preliminary hearing, due diligence required the Commonwealth to seek an alternative courtroom.

We disagree. Appellant's argument is simply another way of saying that the Commonwealth's due diligence obligation encompasses every theoretical action that could prevent a delay. We have long stated that due diligence "does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." ***Bradford, supra*** at 702 (citation omitted). As the Commonwealth observes,

- 6 -

"affirmative action is not synonymous with extraordinary measures." Commonwealth's brief at 11.

In this respect, we note that in **Commonwealth v. Anderson**, 959 A.2d 1248, 1250 (Pa.Super. 2008), we observed "The extent to which the Commonwealth must look for other available courtrooms is not clear." However, in **Anderson**, the Rule 600 run date was set to expire on December 9, 2005, and the Commonwealth scheduled the case for trial on December 1, 2005. At that juncture, a number of postponements occurred, some of which were caused by the courtroom's unavailability. We ultimately concluded that Rule 600 was not violated.

**Anderson** dealt with a quite different scenario than the situation herein, since therein, the Commonwealth was running up against the Rule 600 limit. In contrast, Appellant's case was nowhere near the Rule 600 time limit as of July 24. Whatever the extent of the Commonwealth's due diligence obligations to seek another courtroom when a Rule 600 deadline is looming, we fail to see why due diligence requires the prosecution to seek another magistrate so early in the process. Hence, we agree that the thirty-four-day period of time is not included in the 365-day calculation, due to the magistrate's unavailability. Therefore, the Commonwealth did not cause the delay and the trial court's determination was not erroneous. **See Commonwealth v. Mills**, 162 A.3d 323, 325 (Pa. 2017) ("[G]iven this Court's holding that periods of judicial delay are excludible from calculations

under the rule, courts of original jurisdiction must apply judgment in distinguishing between delay attributable to the court and that which should be allocated to a party.") (citation omitted).

Having established that this time period is not included, we note that the Rule 600 hearing occurred on June 3, 2016.  As of that date, 395 days had elapsed, *i.e.*, thirty days over the limit.  Since we have determined that thirty-four days are not included in the calculation, four days remained in which to commence trial.  The Commonwealth asserted that the time required for disposing of the pre-trial motions was not included. In **Commonwealth v. Hill**, 736 A.2d 578 (Pa. 1999), our Supreme Court established that the filing of a pre-trial motion does not automatically render a defendant unavailable for trial for purposes of the Rule. However, **Hill** established that delay in the commencement of a trial caused by the filing of pre-trial motions is not chargeable to the Commonwealth if the Commonwealth exercised due diligence in responding to the motion. The Commonwealth did so here.

Finally, we note that the Commonwealth represented that it commenced trial on the earliest possible date following the Rule 600 hearing.  Commonwealth's brief at 11.  The Rule 600 hearing transcript indicates that the parties discussed setting the trial as soon as possible. Appellant makes no challenge to any time period other than the thirty-four

days, and we therefore find that Appellant is not entitled to relief on his Rule 600 claim.

We now address Appellant's second claim, which assails the trial court's denial of his pre-trial motion seeking exclusion of the inmate letters. We apply the following standard of review.

> We review a trial court's decision to grant a motion *in limine* for an abuse of discretion. **Commonwealth v. Belani**, 101 A.3d 1156, 1160 (Pa.Super. 2014). "'A trial court has broad discretion to determine whether evidence is admissible,' and [its] ruling regarding the admission of evidence 'will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.'" **Id.** (quoting **Commonwealth v. Huggins**, 68 A.3d 962, 966 (Pa.Super. 2013)).

**Commonwealth v. Ribot**, 169 A.3d 64, 67 (Pa.Super. 2017). Pennsylvania Rule of Evidence 901 provides, in pertinent part, as follows:

> **Rule 901. Requirement of authentication or identification**
>
> **(a) General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> **(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> . . .
>
> (4) *Distinctive characteristics and the like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

Pa.R.E. 901.

The trial court held a pre-trial hearing on this matter, wherein Lieutenant Olivarez testified that, as a result of this incident, he began monitoring Appellant's mail. In authenticating that the letters were penned by Appellant, he explained that an inmate places mail in a designated mailbag, which is then secured. In addition, the Lieutenant stated that Appellant always used the same nickname as a signature in his letters. The envelope for these letters bore Appellant's inmate number and the address of the recipient. Three of the letters introduced at trial were addressed to Roberta Calderon, Appellant's girlfriend. Finally, to confirm that the letters were in fact written by Appellant, the Lieutenant examined other materials signed by Appellant, such as signature sheets at meetings in the jail, and testified that the writing matched. However, Lieutenant Olivarez confirmed that he did not witness Appellant actually signing any document.

We extensively examined the issue of authentication of letters in **Commonwealth v. Brooks**, 508 A.2d 316 (Pa.Super. 1986), which explained the basic principles.

> Generally, two requirements must be satisfied for a document to be admissible: it must be authenticated and it must be relevant. In other words, a proponent must show that the document is what it purports to be and that it relates to an issue or issues in the truth determining process. Specific evidentiary rules have developed for authenticating writings such as letters. These rules are necessary because of the problems involved in ascertaining the authorship of documents. As one commentator notes, "[m]ost documents bear a signature, or otherwise purport on their face to be of a certain person's authorship." 7 Wigmore, *Evidence* § 2130 at 709 (Chadbourn rev. 1978). It

- 10 -

would be too easy to assume that a letter bearing the signature of "X" was authored by "X". In order that such an unsupported assumption not be the foundation of authentication, the requirement for admission of a document such as a letter is a *prima facie* case that the document is what it purports to be. . . .

A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting . . . .

A document may also be authenticated by circumstantial evidence, a practice which has been uniformly recognized as permissible.

*Id*. at 318 (footnotes and some citations omitted).

We find that circumstantial evidence provided a sufficient basis to authenticate the letters. Significantly, the letters were introduced together with their envelopes, which included Appellant's designated inmate number. Furthermore, the letters included details of the crime in question within days of the incident. In **Commonwealth v. Collins**, 957 A.2d 237 (Pa. 2008), our Supreme Court reviewed an ineffectiveness claim challenging appellate counsel's failure to pursue a preserved objection regarding the introduction of inmate mail. As herein, **Collins** involved letters written by the defendant while he was in jail, imploring a witness not to testify against the defendant. The Court explained there was no arguable merit to the ineffectiveness claim.

[T]he Commonwealth counterargues that the letters were authenticated "by their distinctive characteristics, taken in conjunction with the circumstances of the case, as having been

- 11 -

written by [appellant]." Commonwealth's Brief at 64–65. In particular, the Commonwealth notes that the letters: were mailed from the prison in which appellant was incarcerated; contained appellant's unique seven-digit prison identification number; urged a course of conduct that would benefit appellant and only appellant; and identified appellant's trial counsel by name.

. . . .

We agree with the Commonwealth that the trial court's decision to admit the two letters was well within its discretion. The circumstances cited by the PCRA court and the Commonwealth are more than sufficient, when considered in their totality, to authenticate the letters. We further note that the first letter mentioned trial counsel's name in the context of the defense's trial strategy of shifting suspicion for the murder away from appellant and toward Cofer; that the second letter referred to the first one; and that the letters were dated within several weeks of Cofer's July 14, 1992 police statement, which the first letter referenced. Because appellant's underlying claim of trial court error lacks arguable merit, his derivative ineffectiveness claim did not warrant an evidentiary hearing.

*Id*. at 266 (citations to transcript omitted). Therefore, in ***Collins*** the letters were admitted without any reference to opinions regarding the handwriting.

We find that the court did not err in admitting the evidence. As in ***Collins***, these letters contained Appellant's unique prisoner number, referenced specific details of the crimes, specifically referred to the seizure of K2, and three of the letters were sent less than a week after the incident in question. These circumstances demonstrate that the trial court did not err in permitting the introduction of the evidence, and we affirm on that

- 12 -

basis as it is supported by the record.[2]  ***See Commonwealth v. Moser***, 999

A.2d 602, 606, n. 5 (Pa.Super. 2010).

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/21/2017</u>

---

[2] We note that the Commonwealth responded to Appellant's authentication claim on the basis that Lieutenant Olivarez could offer lay opinion testimony that Appellant wrote the letters.  Assuming *arguendo* that Appellant preserved a challenge to the introduction of statements made by Lieutenant Olivarez as to authorship based on the handwriting, as opposed to the introduction of the evidence itself, we deem any such error harmless as the evidence was properly authenticated and introduced.