J-A12002-14

2014 PA Super 211

COMMONWEALTH OF PENNSYLVANIA,  :  IN THE SUPERIOR COURT OF
                                      :                PENNSYLVANIA

Appellant  :

v.  :

JACK BELANI,  :

Appellee  :  No. 943 EDA 2013

Appeal from the Order Entered March 1, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0012541-2010.

COMMONWEALTH OF PENNSYLVANIA,  :  IN THE SUPERIOR COURT OF
                                        :                PENNSYLVANIA

Appellant  :

v.  :

WENJUE LIU,  :

Appellee  :  No. 957 EDA 2013

Appeal from the Order Entered March 1, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0012540-2010.

BEFORE: SHOGAN, STABILE and PLATT*, JJ.

OPINION BY SHOGAN, J.: **FILED SEPTEMBER 25, 2014**

Appellant, the Commonwealth of Pennsylvania, appeals from the

orders entered on March 1, 2013, precluding the admission of DNA evidence

_____
*Retired Senior Judge assigned to the Superior Court.

at the trials of Appellees, Jack Belani and Wenjue Liu.[1]  We are constrained to reverse.

The Commonwealth assails the trial court's orders excluding DNA evidence that would tie Appellees to a robbery during which Appellee Liu shot the victim in the leg.  The trial court summarized the facts as follows:

> [O]n July 24, 2008, [Appellees], along with another co-conspirator, went to the complainant's apartment to commit an armed robbery.  The Commonwealth further alleges that both Belani and Liu were armed and were wearing stockings over their heads, and that Liu ultimately shot the complainant in the leg.  Belani was not arrested until November 5, 2009.  Liu was arrested the following day.  After a preliminary hearing on October 7, 2010, [Appellees] were held for court on robbery, aggravated assault, conspiracy, and related charges arising from the July 24, 2008 incident.  After a number of continuance requests from Belani's attorney, the case was scheduled for a "must be tried" jury trial on September 10, 2012.  Prior to trial, on July 2, 2012, the Commonwealth presented the court with a proposed order for [Appellees'] blood or oral swab samples for purposes of conducting a DNA analysis and comparison.  *See*

---

[1]  The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. **Commonwealth v. Whitlock**, 69 A.3d 635, 636 n.2 (Pa. Super. 2013) (citing Pa.R.A.P. 311(d)).  In **Commonwealth v. Gordon**, 673 A.2d 866 (Pa. 1996), our Supreme Court held that the Commonwealth may appeal the grant of a defense motion *in limine* which excludes Commonwealth evidence and has the effect of substantially handicapping the prosecution.  As the trial court ruling excludes Commonwealth evidence, and the Commonwealth has certified that the effect of the ruling substantially handicaps the prosecution, we find that this appeal is properly before this Court.  **Commonwealth v. Moser**, 999 A.2d 602 (Pa. Super. 2010) (citing, *inter alia*, **Commonwealth v. Matis**, 710 A.2d 12 (Pa. 1998)).  We decline the trial court's and Appellee Bellani's suggestion that this Court inquire into the Commonwealth's good-faith certification; we are not permitted to conduct such an inquiry.  **Moser**, 999 A.2d at 605 n.2 (collecting cases).

July 2, 2012 Order. The court signed the order that same day. On September 6, 2012, at the trial readiness conference, the Commonwealth advised the court that it would not be prepared to proceed to trial on September 10th because Belani had submitted his DNA sample later than expected. The court granted the continuance request and listed the matters for a waiver trial on December 14, 2012.[2]

[2] The case was no longer being called as a jury trial.

On the December 14, 2012 trial date, defense counsel argued two motions. The first was a motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600(g). The court denied the motions to dismiss on March 1, 2013. The second motion was an oral motion—made in the alternative—to preclude the Commonwealth from introducing DNA evidence at trial. The defense argued that they had received the Commonwealth's DNA report as few as three days before trial and had not been afforded sufficient time to have their own expert(s) review the findings. The Commonwealth countered that it had been duly diligent in ensuring that the DNA analysis would be finalized in time for trial and had forwarded the resulting findings to defense counsel the day after receiving them.

The court also was informed for the first time on December 14th that the Commonwealth was demanding a jury trial. The court held its decisions on [Appellees]' motions under advisement and scheduled a January 28, 2013 hearing. The purpose of the hearing was to afford the Commonwealth the opportunity to present testimony explaining the delay in finalizing the DNA analysis. On January 28th, the hearing was continued to February 7, 2013, because the Commonwealth had subpoenaed its witnesses for the wrong time. The testimony presented on February 7, 2013[,] revealed the following:

The samples submitted for screening and DNA analysis were taken from three sources: (1) stockings recovered in July 2008, (2) two swabs from Liu, and (3) two swabs from Belani. The stockings were submitted to the Evidence Intake Department of the Philadelphia Police Department's Forensic Science Center on August 2, 2012. They were analyzed by Forensic Scientist Francis Pabayatty of the Trace Lab division on

August 28, 2012. Liu's swabs were also submitted to the Evidence Intake Department on August 2, 2012. The swabs were then assigned to Mr. Pabayatty on August 24, 2012, and he analyzed them on August 28, 2012. Belani, however, did not submit his swabs to the Evidence Intake Department until August 31, 2012. Mr. Pabayatty analyzed Belani's samples on September 5, 2012. Mr. Pabayatty had completed his analysis of all swabs by September 5th, and entered an electronic request that a member of the DNA Identification Lab review the matters. In the meantime, Mr. Pabayatty prepared a report of his own findings, which was reviewed by his department and finalized on November 17, 2012. Mr. Pabayatty testified that nothing in his paperwork indicated that the cases had been marked as "priority" matters.

Forensic Scientist David Hawkins of the DNA Identification Lab was assigned to the matters on October 9, 2012, and began his work on that assignment on October 17, 2012. Mr. Hawkins testified that he is capable of beginning his analysis once the Trace Lab has completed its preliminary analysis, and was therefore unable to explain the delay between Mr. Pabayatty's September 5, 2012 preliminary findings and his own assignment. Mr. Hawkins was told that the trial date was December 14, 2012, and was confident that he would be able to provide his analysis by that time, as the process generally takes eight to twelve weeks. Mr. Hawkins completed his findings and preliminary report by November 9, 2012. The final review of the findings and report was completed on December 6, 2012. Mr. Hawkins forwarded the report to the District Attorney's Office that same day. Mr. Hawkins could not point to any notation in his file that these matters were to be treated with "priority" status. He did testify, however, that he spoke with the assigned Assistant District Attorney Andrei Govorov on or about November 27, 2012, and was asked to complete his report by the end of the following week (*i.e.*, one week in advance of trial).

On March 1, 2013, the court granted [Appellees'] motion to exclude the DNA evidence.

Trial Court Opinion, 8/22/13, at 1–4 (internal citations and some footnotes omitted). The Commonwealth filed timely notices of appeal and

concurrently filed statements pursuant to Pa.R.A.P. 1925(b) despite the fact that the trial court had not yet ordered them. On December 6, 2013, we granted the Commonwealth's November 21, 2013 motions to consolidate the cases on appeal.[2]

The Commonwealth presents the following single issue for our review:

Did the lower court err when, in contravention of controlling precedent, it excluded DNA evidence on the ground that testing had not been performed further in advance of trial?

Commonwealth's Brief at 3.

In excluding the DNA evidence, the trial court's reasoning, at the most basic level, is that if the Commonwealth had sought testing earlier, it would have received its expert's report sooner. The trial court determined that the Commonwealth failed to disclose its expert findings to defense counsel sufficiently in advance of trial, such that defense counsel did not have time to secure their own experts to review the evidence. The court determined that the prosecutor understood that the DNA analysis would take six to eight weeks. Based upon that timeline, the trial court concluded the results should have been finalized and disclosed by late October or early November, 2012, thereby allowing defense counsel sufficient time to retain their own experts to conduct an independent review and analysis before the December

---

[2] As the trial court has filed identical Pa.R.A.P. 1925 (a) opinions in both cases on the same date, our reference to the trial court opinion is understood to refer to the opinions in each Appellee's case.

14, 2012 bench trial. Trial Court Opinion, 8/22/13, at 5. Instead, the final reports were not completed until December 6, 2012, more than twelve weeks after submission of the final sample. *Id*. Although the Commonwealth immediately provided its expert's findings to defense counsel when it received them on December 6th, the defense did not have sufficient time to secure its own expert analysis. *Id*. at 5–6.

We have reviewed the record, including the notes of testimony, and considered the arguments of the parties, the reasoning of the trial court, and the applicable law. For the reasons which follow, we reverse.

In evaluating the denial or grant of a motion *in limine*, our standard of review is well-settled. When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. *Moser*, 999 A.2d at 605. "A trial court has broad discretion to determine whether evidence is admissible," and a trial court's ruling regarding the admission of evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013), *appeal denied*, 80 A.3d 775 (Pa. 2013); *Commonwealth v. Minich*, 4 A.3d 1063 (Pa. Super. 2010) (citations and quotations omitted). If the evidentiary

question is purely one of law, our review is plenary. **Moser**, 999 A.2d at 605 n.4 (citing **Schroeder v. Jaquiss**, 861 A.2d 885, 889 (2004)).

The Commonwealth maintains that Pa.R.Crim.P. 573 does not require that the Commonwealth perform DNA testing at any particular time; thus, it was improper to exclude the DNA results a week before trial, even if the Commonwealth could have received the results sooner.

Pa.R.Crim.P. 573(B)(1)(e), provides, in relevant part, as follows:

**Rule 573. Pretrial Discovery and Inspection**

* * *

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory*.  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

* * *

> (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

Notably, the rule does not require the Commonwealth to conduct scientific tests at any particular time nor does it define or limit the time of disclosure.

In support of its position, the Commonwealth cites **Commonwealth v. Montgomery**, 626 A.2d 109 (Pa. 1993), abrogated in part on other grounds by **Commonwealth v. Burke**, 781 A.2d 1136 (Pa. 2001). The Commonwealth suggests that while **Burke** clarified that under **Brady v. Maryland**, 573 U.S. 83 (1963), the prosecution's discovery burden extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution, it did not change the law regarding inculpatory evidence, such as at issue herein, nor did it require the Commonwealth to conduct scientific tests at a particular time. Thus, it maintains that **Burke** did not affect **Montgomery's** holding.

In **Montgomery**, the Commonwealth had additional testing performed on the victim's blanket during a lunchtime recess in the defendant's trial for attempted rape. That further testing revealed the presence of a seminal stain for the first time, and the Commonwealth was permitted to present its new scientific evidence to the jury. On appeal, our Supreme Court held that there was no discovery violation even under those circumstances because Pa.R.Crim.P. 305, the precursor to Rule 573, did not require the Commonwealth to have scientific testing performed at any particular time. Thus, herein, the Commonwealth suggests that while it would have been appropriate to grant a defense request, if one had been made, for a

continuance to obtain their own expert analysis, it was error to completely exclude the Commonwealth's DNA evidence. We agree.

Further, the Commonwealth argues that **Commonwealth v. Smith**, 599 A.2d 1350 (Pa. Super. 1991), abrogated in part on other grounds by **Commonwealth v. Malinowski**, 671 A.2d 674 (Pa. 1996), is directly on point. The Commonwealth asserts that in **Smith**, the Commonwealth obtained its DNA expert's report one week before trial, and the trial court excluded the DNA evidence because the Commonwealth had not diligently sought to have the testing performed earlier. On appeal, this Court reversed, holding that the mere failure to have the testing performed earlier did not violate Pa.R.Crim.P. 305, and that even if there had been a violation, a continuance, not exclusion of the evidence, would have been the proper remedy. The Commonwealth urges that the trial court's conclusion that the defense herein did not have sufficient time to secure additional expert analysis before the start of trial on December 14, 2012, directly contradicts **Smith**.

Appellees respond that the trial court properly excluded the DNA evidence. They maintain that the exclusion was not based solely on the Commonwealth's tardiness in providing the results but was also premised on its failure to act with due diligence in expediting the results of the analysis.

Our review of the record does not support a lack of due diligence on the part of the Commonwealth.

At the December 14, 2012 hearing,[3] when Appellees objected to the admission of the DNA report that they received December 7, 2012, the prosecutor noted that when the trial court signed the order requiring Appellees to provide DNA samples on July 2, 2012, neither defense counsel objected. N.T., 12/14/12, at 8. The prosecutor stated:

> As your Honor recalls, I had Your Honor sign the order on July 2nd, 2012, for both Liu and Belani to submit themselves for swabs for DNA analysis purposes. There were no objections by either defense attorneys . . . .
>
> * * *
>
> In this case there was no objection raised, neither by [counsel for Appellee Belani], neither by [counsel for Appellee Liu]. There was no contest. There was no argument for Your Honor not to issue the order. I asked for her to sign the order; there was no objection raised.

*Id*. at 8.

The trial court indicated that as of July 2, 2012, trial was set for September 10, 2012. N.T., 12/14/12, at 9. The prosecution further explained that while Appellee Liu complied in a timely fashion, Appellee Belani did not.

---

[3] The complaints were filed against Appellees in November 2009. It is noteworthy that the trial court determined, when denying Appellees' Pa.R.Crim.P. 600 speedy trial motions, that "the Commonwealth acted with due diligence in bringing the case for trial[,] and the postponements were beyond the control of the Commonwealth." N.T., 3/1/13, at 10–11.

[THE COMMONWEALTH]: [Appellee Liu] submitted himself to Central Detectives to get this testing done in a timely fashion. [Appellee Belani] did not. It took three to four attempts of me calling the defense attorney's office, scheduling different dates, calling my agent to go to Central and for them to be present. Providing this agent's cell phone, so when Mr. Belani walks into Central Detectives, he can actually dial that number, be met, and transported to the room so it could be done. He failed to do it.

He finally did that in August, late August. When I called DNA [testing], and they couldn't do, obviously, partial results. They would wait for these two defendants, the submission of both swabs from both Liu and Belani before they can even do an analysis.

THE COURT: Why?

[THE COMMONWEALTH]: Well, that [is] the[ir] policy. They cannot do testing—it's not going to be conclusive. They cannot do [it] unless all genetic material, all material they need for analysis is submitted. One was not. I was not only duly diligent, I was beyond duly diligent, short of going personally. Actually, my agent went to Belani's house and tried to get him himself to go to Central. He wasn't there. He wasn't home. He wasn't available.

Finally, at some point late in August[,] Belani did submit himself. Everything was submitted to DNA, and I was told it's going to take 6 to 8 weeks. That's why on 9/6, I told you I would not be available on 9/10. The very next day after receiving the results, I fax[ed] results to both attorneys, very next day.

N.T., 12/14/12, at 10–12. The trial court opined the results should have been available at the end of October; the prosecutor explained that since the trial court granted an extension and assigned a trial date of December 14, 2012, that was the date the laboratory utilized.

-11-

[THE COMMONWEALTH]  I told [the lab] that the results—I need the results before my trial date.  They asked me, When is your trial date?  December 15th.  And they asked me, Is that realistic, can they expect the results done?  They say 6 to 8 weeks.  It doesn't say 6 to 8 weeks you get your results.

THE COURT:  Sure.  And that would be two months from August.  September, October.  So even November.

[THE COMMONWEALTH]  Yeah, but I'm not the only case they analyze.  And I spoke to the supervisor.  I demanded to speak with the [lab's] supervisor to have those results expedited, and I did.  But I was told they cannot even assign it right away.  It's going to take a few weeks before this case is even assigned to somebody who's available.

And I can call—I would need about an hour and a half, two hours to produce analysis who can explain to Your Honor how it's done in a DNA lab in a more detail[ed] way.

I tried to do everything I could, but because it's not a homicide case, because they have a backlog of cases submitted way before me, it takes time.

N.T., 12/14/12, at 13–14.

When the trial court asked the prosecutor why he waited until July 2, 2012, to request the DNA testing, in that Appellees had been arrested in late 2009, the prosecutor explained, "I was assigned to this case in the Spring of 2012.  I reviewed it, and I made the determination that that additional piece of evidence would be beneficial for us to proceed.  I don't know why the DA before me didn't do it.  I cannot explain that."  N.T., 12/14/12, at 15.  At

that point, the prosecutor referenced the myriad **defense** continuances that prevented the case from being tried earlier.[4]

We conclude, based on our consideration of the record and the law, that the trial court's order excluding the DNA evidence pertaining to Appellees must be reversed. Pa.R.Crim.P. 573 lacks any provision authorizing the exclusion of evidence and does not require that the Commonwealth perform scientific testing in a specified time frame. Further, the proper remedy for "late" disclosure should have been authorization of a defense continuance; alas, none was requested.

Orders reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/2014

---

[4] In denying the Rule 600 motion, the trial court noted that from the date of the preliminary hearing on October 7, 2010, until December 14, 2012, only 179 days were attributable to the Commonwealth. N.T., 3/1/13, at 3–6.