J-S25017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMUEL LANCE MCPHERSON | : | |
| | : | |
| Appellant | : | No. 1228 WDA 2017 |

Appeal from the Judgment of Sentence April 26, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0002753-2016

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY PANELLA, J.:                **FILED SEPTEMBER 07, 2018**

Samuel McPherson appeals from the judgment of sentence entered after the trial court found him guilty of simple assault and summary harassment arising from charges he pointed a gun at Eldwin Williams. McPherson argues the court erred in allowing the Commonwealth to present Williams's written statement from the night of the crime. And that the verdict was against the weight of the evidence. After careful review, we affirm.

Williams testified that he met McPherson's girlfriend, Sylvia Cottom, at the casino where they had gambled together that night. Around 3:30 a.m., Williams gave Cottom a ride to her home. When they arrived, McPherson and Cottom's mother were waiting on the porch.

Cottom and McPherson began to argue. While they argued, Cottom's mother asked Williams if he could give McPherson a ride to his home, since

McPherson had missed his bus. Williams agreed to do so, and when McPherson entered his car, McPherson said, "look here." McPherson was pointing a gun at Williams. Williams fled from his car, screaming for help.

At this point in Williams's testimony, the Commonwealth sought to enter the written statement Williams gave to police shortly after the incident. Defense counsel objected, arguing the statement was hearsay, and further, that the prosecutor was attempting to bolster Williams's credibility before it had been challenged. The trial court overruled the objection, and allowed the written statement to be entered into evidence.

Officer Craig Canella testified that police received a report of a man banging on a door, yelling that he was going to be shot. Officer Canella responded to the call and interviewed Williams. After hearing Williams's story, he drove to Cottom's home, where McPherson was sitting on the porch.

Williams's car was still in the street, with its doors closed and the engine running. McPherson told the officers that a man had just stopped the car and started running down the street. No gun was found on McPherson. Cottom's mother refused to allow officers into her home to search for a gun.

Officer Canella instructed Williams to move his vehicle, as it was illegally parked. He also requested that Williams come to the police station the next day to give a statement. Williams appeared at the station and gave a written statement at 5:25 a.m.

McPherson testified that he received a phone call from Cottom indicating she was leaving the casino at 1 a.m. that night. He became concerned when Cottom was not home shortly thereafter. When Williams dropped off Cottom, he admitted he argued with Cottom about her failure to let him know her schedule had changed.

Cottom's mother interrupted, noting that she didn't want the argument on her property in the middle of the night. She informed McPherson that Williams would give him a ride to his home on the other side of town. McPherson was grateful, noting the long bus ride the trip would otherwise require.

When he got in the car, he asked Williams, "seriously, bro, what was going on with my girl? Where did you get her from?" He testified that Williams immediately unbuckled his seat belt and exited the car. He watched as Williams ran down the street and into a parked car, and then began banging on doors further down the street. He told police that Williams was crazy, and that he jumped out of the car and ran down the street. He denied ever possessing a gun.

In his first issue on appeal, McPherson contends the court erred in admitting Williams's written statement given shortly after the incident. The trial court has broad discretion over the admissibility of evidence, and we will not overrule its decision unless the court abused that discretion. *See Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa. Super. 2014). An

abuse of the court's discretion is established if the court was manifestly unreasonable, partial, biased, or acted with ill-will. ***See id***. Additionally, an abuse of discretion occurs when the record contains no support for the court's decision. ***See id***.

McPherson argues Williams's written statement constitutes inadmissible hearsay evidence. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted by the declarant." ***Commonwealth v. Puksar***, 740 A.2d 219, 225 (Pa. 1999) (citation omitted). The court found the Commonwealth's proffer was not for the purpose of proving the truth of Williams's assertions against McPherson. Rather, the court concluded the written statement was entered for the purpose of establishing a prompt complaint.

The Commonwealth asked Williams if he was familiar with his written statement. ***See*** N.T., 4/26/17, at 21. He acknowledged he was. ***See id***. Defense counsel objected, arguing it was a hearsay statement. ***See id***., at 22. After the court overruled the objection, the Commonwealth asked Williams to authenticate the statement and his signature, which he did. ***See id***., at 22-23. Williams testified he wrote the statement right after the incident. ***See id***., at 23.

The Commonwealth moved the statement into evidence, and immediately ended its direct examination of Williams. **See id**., at 23-24. The contents of the statement were not read to the court. We therefore can find

no error in the court's conclusion that the Commonwealth did not use the statement to prove the truth of the matter contained in the statement. It was not an abuse of the court's broad discretion to conclude the exhibit was entered merely to establish Williams's prompt complaint to authorities. McPherson's first issue on appeal merits no relief.

Next, McPherson argues the verdicts were against the weight of evidence presented at trial. We do not review challenges to the weight of the evidence *de novo* on appeal. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the trial court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial. **See id**.

"[W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." **Commonwealth v. Davidson**, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

Here, the only relevant factual dispute concerns McPherson's actions after he entered Williams's car. Williams testified that McPherson pointed a

gun at him. McPherson testified that Williams just unbuckled his seat belt and ran out of the car after McPherson asked him about Cottom. No one else was in the car to observe these events.[1]

The court found Williams's testimony credible, and McPherson's and Cottom's testimony incredible. These credibility determinations are not shocking in any sense; indeed, they are a core function of any fact-finder in our legal system. We cannot conclude the court abused its discretion in refusing to order a new trial. Thus, McPherson's second issue on appeal merits no relief.

As McPherson has not established any right to relief on appeal, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Ott joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

---

[1] Cottom testified she did not see a gun that night, but did not testify as to what happened inside the car: "[McPherson's] in the car for like three seconds and then [Williams] just runs out … of the car." N.T., 4/26/17, at 66.

Date: <u>9/7/2018</u>