J-S42003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SHARIFF L. LAYTON | : | |
| Appellant | : | No. 1116 MDA 2017 |

Appeal from the Judgment of Sentence June 13, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0007165-2015

BEFORE:  BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 19, 2018**

Sheriff Layton appeals from the judgment of sentence of twenty-five to fifty years imprisonment imposed after a jury convicted him of robbery. We affirm.

The trial court offered the following summary of the evidence offered at Appellant's trial.

> On January 28, 2011, the MidPenn Bank on North Front Street in Harrisburg was robbed. A man entered the building around 10:30 and was fully concealed. Tellers believed he was male based on his size, stature and voice. He handed two bags to each of the two tellers at their registers and then walked behind the teller line and opened a third teller register and took money from there. He took money that was attached to dye packs. He was wearing a black hoodie with a white logo on it. The man left with the bags of money and one teller followed him and locked the bank doors. The tellers then alerted authorities.

> Corporal Minier was dispatched to the scene, along with several other officers. He assisted in setting up a perimeter and then received information of a crashed vehicle just south of the

---

*   Retired Senior Judge assigned to the Superior Court.

bank. About two or three car lengths [from] the parking lot, a small red sedan was crashed with a broken window and red smoke coming out of the car. It appeared to be from a dye pack.

It had recently snowed that day. A K-9 officer, Reno, was called in and [Corporal] Minier, Officer Hawkins, and Reno began to track from the vehicle. The officers saw footprints outside the driver's side of the car that they used to start the track. They tracked through some streets and alleys until the dog lost the scent on Second Street. While tracking between some houses, they did find an area of snow that was red which they believed was from the dye pack. During the course of the investigation, they discovered that the crashed vehicle had been stolen previously. They inspected the vehicle and found a screwdriver, presumably used to pop the ignition, pillow cases, and the money covered in red dye.

Later that day, Deputy United States Marshall Gary Duncan received a phone call from an informant regarding the bank robbery. [Marshall] Duncan, in turn, relayed that information to Detective Gibney.

Detective Richard Gibney is a detective with the Harrisburg Police, but he also serves on the FBI task force which means he is a task force officer with the same arresting powers as an FBI agent. He assists them with investigations in the greater Harrisburg area. He was the lead investigator on the case. On the day of the incident, he received information from Marshall Duncan that led him to send detectives to 537 Curtin Street. He ultimately is the
one who filed charges in 2015.

Richard Iachini, a detective with the Harrisburg Police, assisted with the investigation. Upon direction from Det. Gibney, he proceeded to 537 Curtin Street, Appellant's home address. As he walked toward the home from the rear, he saw a small spot of snow with a red or pinkish color to it and a black hooded sweatshirt with a graphic on the back near a trash can.

In November 2015, Officer Michael Rudy of Harrisburg Police, served an arrest warrant on Appellant at 537 Curtin Street.

William Kimmick, an investigator with the Harrisburg Police, processed the bank, the car and the area of snow with red dye.

He found pillow cases and money covered in red dye as well as the interior of the car was stained with red dye. He did not find any masks, gloves or clothing in the car and he was unable to get any suitable fingerprints from the interior of the car.

Jessica Mulhollem, a forensic scientist with the Pennsylvania State Police, received the black sweatshirt and a dye pack from the investigation. She was instructed to look for red dye on the sweatshirt . . . and found some on the inside. She analyzed that dye and found that it was identical to the dye in the dye pack.

Timothy Gavel, a PSP DNA lab forensic scientist, did DNA testing on samples from the wrists of the sweatshirt and of a buccal swab from Appellant. The left wrist provided a mixed sample; there was DNA from at least three people on the sleeve. One person's DNA did match the known buccal sample in eight places (they test at 16 places). Statistically speaking, there is between a one in nine billion and one in [eighteen] billion chance of someone other than Appellant having that same DNA.

Trial Court Opinion, 12/19/17, at 3-6 (citations omitted).

A jury convicted Appellant of robbery, and he was sentenced as indicated above on June 13, 2017. Appellant filed a timely notice of appeal, but his counsel failed to file a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). This Court remanded the case, substitute counsel was appointed, and a *nunc pro tunc* 1925(b) statement was filed. Appellant now presents the following questions for consideration.

1. Did not the [trial] court err in denying [Appellant's] motion to dismiss the charges due to excessive delay in the filing of the criminal charges when the delay caused [Appellant] prejudice and when the delay was the product of reckless conduct by the prosecution?

2. Did not the [trial] court err in denying [Appellant's] pretrial motion to exclude references by police witnesses that a reliable informant provided information on January 18, 2011, implicating defendant as the perpetrator of a bank

robbery committed on that date when such references were not relevant for the non-hearsay purpose of explaining the police's course of conduct?

Appellant's brief at 5.

Appellant first contends that the trial court erred in failing to dismiss the charges due to the excessive delay between the commission of the crimes and the filing of the criminal charges against him. Appellant's brief at 18. The trial court offered the following summary of the facts relevant to this claim.

[Detective] Richard Gibney testified that he was quickly named the lead investigator on the case in January 2011. He is a task force officer with the Federal Bureau of Investigation so has a dual designation. He explained that some crimes, such as bank robbery, can be prosecuted at either the state or federal level. The United States Attorney for the Middle District's policy is to have the investigators take the case to them and then the U.S. Attorney's Office determines whether they want the case or not.

The MidPenn Bank in Harrisburg was robbed on January 28, 2011. Appellant was taken into custody in June 2011 on unrelated matters. At the time, [Detective] Gibney did not believe they had enough evidence for a federal indictment. The first time he presented his evidence to the U.S. Attorney was in 2013 when he had DNA testing matching Appellant's DNA to DNA found on a sweatshirt during the investigation. In December 2011, he did have a COD1S hit for Appellant's DNA, but he did not take that to the U.S. Attorney because they were investigating a rash of bank robberies associated with individuals with ties to Appellant. [Detective] Gibney also interviewed at least two individuals prior to 2013 who implicated Appellant in the MidPenn robbery. Neither of these individuals wanted to testify in trial.

In October 2013, [Detective] Gibney approached Assistant U.S. Attorney Meredith Taylor about the bank robbery and she indicated she wanted to indict, but needed the U.S. Attorney's approval. Several weeks later, after not hearing anything, [Detective] Gibney checked in with [Attorney] Taylor who told him the case had been reassigned to another Assistant U .S. Attorney, Joe Terz. [Attorney] Terz wanted more evidence before indicting

so the investigation continued. [Detective] Gibney and [Attorney] Terz maintained contact until about October 2015, when [Detective] Gibney decided to call the Dauphin County District Attorney's Office to see if they would file charges. That office almost immediately filed charges.

During the course of the investigation, [Detective] Gibney was not aware of any possible alibi witnesses. He acknowledged that nothing prevented him from approaching the District Attorney sooner as sometimes cases are prosecuted on both levels.

Trial Court Opinion, 12/19/17, at 2-3 (citations omitted). Upon this evidence, the trial court denied Appellant's motion to dismiss.

We begin our review by noting that the determination that prosecutorial delay was reasonable under the facts of a particular case is within the discretion of the trial court, and such a decision will be reversed only if there is insufficient evidence in the record to support the determination of the trial court. *Commonwealth v. Montalvo*, 641 A.2d 1176, 1182 (Pa.Super. 1994).

"[S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (cleaned up). "However, statutes of limitation do not define the full extent of the rights of the accused concerning the time in which charges can be filed." *Commonwealth v. Snyder*, 713 A.2d 596, 599 (Pa. 1998). The due process right provided by both the United States and Pennsylvania constitutions "also protects defendants from having to defend

stale charges, and criminal charges should be dismissed if improper pre-arrest delay causes prejudice to the defendant's right to a fair trial." *Id*. at 599-600.

In analyzing Appellant's claim, Appellant, the Commonwealth, and the trial court all relied upon our Supreme Court's plurality decision in ***Commonwealth v. Scher***, 803 A.2d 1204 (Pa. 2002) (Opinion Announcing the Judgment of the Court). However, as this Court explained in ***Commonwealth v. Wright***, 865 A.2d 894 (Pa.Super. 2004), the ***Scher*** Court "was unable to agree on a controlling standard" as to when significant delay in prosecution constitutes a due process violation. *Id*. at 900. In ***Wright*** we offered a summary of the "divergent views of the members of the Court" which show an "absence of concord on this issue of extensive pre-arrest delay." *Id*.

Nonetheless, a thorough examination of the various opinions in that case reveals a majority of the ***Scher*** Court agreed that a defendant cannot prevail on a delayed prosecution due process claim unless he suffered actual prejudice. Further, even if actual prejudice is shown, delay will not warrant dismissal of charges if there were proper reasons for waiting to arrest the defendant. In other words, "delay is excusable if it is a derivation of reasonable investigation." ***Wright***, ***supra*** at 901 (internal quotation marks and emphasis omitted). The ***Wright*** Court also explained the procedure for litigating a delayed prosecution claim: the defendant bears the initial burden of proving actual prejudice; if that is done, the burden shifts to the Commonwealth "to provide a reasonable basis for the extended delay in prosecuting the crime." *Id*. at 902.

- 6 -

We now apply the above law to the instant case. Appellant contends that he was prejudiced by the interim death of two witnesses who "could have provided alibi testimony or other exculpatory testimony." Appellant's brief at 27. Appellant further argues that the delay precluded the possibility of his negotiating a sentence to run concurrently with the more-than-four-year parole violation sentence that he served during the time the Commonwealth could have brought charges but did not. *Id*. at 28. *See also* Motion to Dismiss for Excessive Delay, 2/3/17, at ¶¶ 22-24, 27.

The trial court determined that Appellant failed to establish actual prejudice, and we agree. As this Court has explained:

> In order for a defendant to show actual prejudice, he or she must show that he or she was meaningfully impaired in his or her ability to defend against the state's charges to such an extent that the disposition of the criminal proceedings was likely affected. This kind of prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of an essential witness. It is not sufficient for a defendant to make speculative or conclusory claims of possible prejudice as a result of the passage of time.

*Commonwealth v. Neff*, 860 A.2d 1063, 1074 (Pa.Super. 2004) (quoting *Scher*, *supra* at 1222).

> When a defendant claims prejudice through the absence of witnesses, he or she must show in what specific manner missing witnesses would have aided the defense. Furthermore, it is the defendant's burden to show that the lost testimony or information is not available through other means.

*Commonwealth v. Tielsch*, 934 A.2d 81, 92 (Pa.Super. 2007) (internal quotation marks and citations omitted).

Regarding the deceased witnesses, Appellant offers mere bald assertions with no evidentiary support. Appellant did not submit any evidence of what testimony the two deceased witnesses could have offered, let alone that they were willing and able to testify at some point before Appellant was charged with the robbery. Appellant did not even establish when within the period between the robbery and the arrest that the witnesses died. For all we can tell from the record, they could have died in 2011 or 2012, such that they would not have been available even if there had been no delay on the part of the Commonwealth. Moreover, Appellant offered no evidence that the information allegedly possessed by these witnesses was not available through other means. Accordingly, his allegations regarding the deceased witnesses did not satisfy his burden of proving actual prejudice. *See*, *e.g.*, *Tielsch*, *supra* at 92 (holding defendant failed to establish actual prejudice where he failed to allege or show that the evidence that his deceased uncle could have offered was not available through other means).

Nor did Appellant satisfy his burden by noting that he was no longer able to serve his sentence in the instant case concurrently with his prior sentence. The cases Appellant cites to support this argument do not concern delayed prosecution, but rather violation of speedy trial rights. *See* Appellant's brief at 28. The focus in the speedy-trial situation is "to prevent undue and oppressive incarceration prior to trial," to limit the defendant's "anxiety and concern accompanying public accusation," and "to limit the possibilities that long delay will impair the ability of an accused to defend himself."

***Commonwealth v. Kirk***, 283 A.2d 712, 714 (Pa.Super. 1971) (quoting ***Smith v. Hooey***, 393 U.S. 374, 377 (1969)).

In a delayed prosecution case such as the instant case, the Commonwealth has avoided the primary ill cited in Appellant's speedy-trial cases: it did not incarcerate the accused on a new charge while it continued to put its case against him together. Not only does Appellant's concurrent-sentence claim of prejudice in the case *sub judice* in no way suggest the type of prejudice relevant to a delayed-prosecution case, *i.e.*, that he "was meaningfully impaired in his . . . ability to defend against the state's charges," but it is no more than a "speculative or conclusory claim[] of possible prejudice" that is insufficient to establish his entitlement to relief. ***Neff***, ***supra*** at 1074.

Therefore, we hold that the trial court's determination that Appellant failed to establish that he suffered actual prejudice as a result of the Commonwealth's delay in prosecuting him is supported by the record and does not constitute an abuse of discretion. Further, because Appellant failed to meet his burden of proving prejudice, the burden did not shift to the Commonwealth to show that it had a reasonable basis for the delay. Accordingly, Appellant's first claim of error merits no relief.

With his remaining issue, Appellant challenges a pretrial evidentiary ruling of the trial court. As such, the following law applies.

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether

- 9 -

evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa.Super. 2014) (citations omitted).

Appellant contends that the trial court erred in denying his pretrial motion to preclude police officers from referencing at trial that they were given information by a reliable informant that Appellant was the robber of the MidPenn Bank. Appellant's brief at 29. Appellant argues that this testimony was inadmissible hearsay if offered for the truth of the matter asserted, and unnecessarily prejudicial as offered to explain the police's course of conduct in going to Appellant's home on the date of the robbery, where they found evidence of the red dye and the sweatshirt with Appellant's DNA. ***Id***. at 29-32.

The trial court succinctly addressed Appellant's claim as follows: "All the officers testified to was that an informant provided information that led them to an address. In fact, upon arriving there the officers did find important evidence in this case. Nothing about their references was the slightest bit prejudicial." Trial Court Opinion, 12/19/17, at 7-8.

The record supports the trial court's conclusion. Marshall Duncan's testimony covers a mere three pages and includes in relevant part as follows.

Q.    As part of your work with the U.S. Marshals, do you work with informants?

- 10 -

A.     On a regular basis.

Q.     Approximately how often?

A.     Daily.

Q.     If I could draw your attention to January 28 of 2011, at some point did an informant come to you with information?

A.     Yes, ma'am, he did.

Q.     Was that over the telephone, in person?

A.     It was over the telephone.

Q.     You knew the person that called you ?

A.     Yes, ma'am, I did.

Q.     And they provided you with information about a bank robbery that had happened that day?

A.     That is correct.

Q.     That was about the Mid Penn Bank robbery at 2615 North Front Street?

A.     I believe that's correct, yes, ma'am.

Q.     And then you provided that information to Detective Gibney?

A.     That's correct.  With the fact that it was a bank robbery and knowing Detective Gibney was working with the FBI task force, FBI generally handles the bank robberies.  Because it occurred in the City of Harrisburg, he was my first point of contact.

N.T. Trial, 4/26-28/17, at 95-96.

Detective Gibney also offered only a few pages worth of testimony, including the following.

Q.     Do you know where you responded initially on January 28th of 2011?

A.     I believe I got a phone call to respond to the bank. I went to the bank and met with I believe it was Lieutenant Fagan was there, Detective Taylor, and there was other officers and detectives in the area. The vehicle was still out front.

Q.     At some point you got a call from Marshal Duncan. Correct?

A.     Yes.

Q.     And he provided you with some information—

A.     Yes, he did.

Q.     — that he had received?

A.     Correct.

Q.     And then you proceeded to send detectives out to 537 Curtin Street?

A.     Yes, I did.

Q.     And that was known to be the home of [Appellant]?

A.     Yes, it was.

Q.     That was his registered address as you knew it at that time?

A.     Yes.

*Id*. at 207-08.

We find no error in the trial court's decision to allow the above testimony. Our Supreme Court explained as follows in a case relied upon by Appellant.

It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they

are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted.

Nevertheless, it cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

*Commonwealth v. Palsa*, 555 A.2d 808, 810 (Pa. 1989).

Here, the witnesses did not testify that the informant identified Appellant as the robber, or even offer the contents of the informant's out-of-court-statements. They merely informed the jury why it was that the police went to Appellant's home. Otherwise, the jury would have been left wondering why the officers had any reason to go to Appellant's address shortly after the robbery to recover in its vicinity the sweatshirt worn by the robber and snow stained by the red dye. The evidence was relevant but not unduly prejudicial, and thus was properly admitted. *See*, *e.g.*, *Commonwealth v. Weiss*, 81 A.3d 767, 805 (Pa. 2013) (holding testimony that anonymous call informing trooper that the appellant was with the victim on the night she disappeared was properly admitted to explain what prompted the trooper's interview of the appellant). Therefore, Appellant's second claim warrants no relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/19/2018</u>