J-S16045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TRAVON JOHNSON | : | |
| | : | |
| Appellant | : | No. 1306 MDA 2021 |

Appeal from the Judgment of Sentence Entered July 19, 2021
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004250-2020

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: OCTOBER 11, 2022**

Travon Johnson appeals from the judgment of sentence imposed following a jury finding him guilty of aggravated assault, procurement/use of a weapon as an inmate, and simple assault.[1] For these offenses, Johnson was sentenced, after a subsequent modification, to an aggregate incarceration term of five to ten years. On appeal, Johnson primarily challenges the lower court's later amendment of his sentence, as it significantly increased the amount of time he would spend incarcerated. In addition, Johnson challenges the weight of the evidence utilized to adjudicate his guilt and further contests the court's granting of a motion *in limine* filed by the Commonwealth. After a thorough review of the parties' submissions as well as the record, we are

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. § 2702(a)(4); 18 Pa.C.S.A. § 5122(a)(2); and 18 Pa.C.S.A. § 2701(a)(1), respectively.

unable to find any evidence that, in modifying his sentence, the court complied with the notice requirement contained in 42 Pa.C.S.A. § 5505. Therefore, we are compelled to vacate Johnson's judgment of sentence and remand.

As cogently summarized by the trial court:

On August 12, 2020, Correctional Officer Dough Lehman … was assigned to the D Block of Dauphin County Prison. When [O]fficer Lehman reached the end of the block, he observed two inmates "locked up" as if they were "horseplaying." One inmate, [Trevetres] Kendrick, was against the wall and the other, [Johnson], was huddled into him with his head buried in his chest. The two inmates did not respond to [O]fficer Lehman's commands to stop. Officer Lehman called for all available guards to respond. Officer Lehman, along with other officers, entered the cell and attempted to pull … Kendrick and [Johnson] apart. It took two officers to pull [Johnson] off … Kendrick. The officers pulled [Johnson] out of the cell through the door. At that point, someone yelled that there was a shank. Officers were able to put [Johnson] on the floor to handcuff him. Officer Lehman observed dots of blood on … Kendrick's shirt when [Johnson] was pulled off him. [Johnson] was then escorted to another cell block. Officer Lehman testified that … prior to this incident, there were no weapons laying on the floor of the cell block.

Officer Kasey Sharp … responded to the all guards call for this incident. Officer Sharp observed two inmates inside the cell just standing by the wall embraced with each other. Officer Sharp testified that the inmates did not stop what they were doing when asked to. The officers had to physically remove [Johnson] from … Kendrick. As the other officers restrained [Johnson] outside of the cell, Officer Sharp remained inside the cell with … Kendrick. . . . Kendrick was frazzled, had his hands up, and kept repeating that [Johnson] had stabbed him. Officer Sharp observed blood on … Kendrick's hands.

Officer Pamela Arbogast also responded to the all guards call on the day of the incident. Officer Arbogast did not enter the cell[. H]owever, she observed the other officers bring [Johnson] out of the cell and take him to the ground to be handcuffed. Officer Arbogast observed a shank right by his hand as he was on the

ground. The shank appeared to be a piece of wire, probably from the fence, with a ripped piece of a sheet wrapped around it and a loop on the end. Officer Arbogast testified that the shank was not on the ground before [Johnson] was taken out of the cell and placed on the ground. Officer Arbogast picked up the shank and gave it to a sergeant. Officer Arbogast observed blood on … Kendrick's face.

Lieutenant Kyle Bahoric responded to the all guards call on the day of the incident. Lieutenant Bohoric observed a struggle between officers and an inmate when he arrived at the cell. Lieutenant Bohoric observed that [Johnson] was "prepared" by having his face and head covered by a sheet or shirt. Lieutenant Bohoric did not observe any injuries on [Johnson].

Katelyn Wright …, a registered nurse with PrimeCare, was working at Dauphin County Prison on the day of the incident. … Wright observed that … Kendrick had multiple puncture wounds and scratches to his left forearm, left shoulder, above the left ear, and his forehead.

… Kenrick, the victim in this matter, testified that he does not remember who his cellmate in Dauphin County Prison was, who [Johnson] is, or what happened during the incident. … Kendrick further testified that he did not have injuries that day. On August 19, 2020, … Kendrick placed a phone call regarding this incident[. H]owever, he testified that he does not remember making that call. … Kendrick went on to testify that he was not attacked and that he never sought treatment for his injuries. … Kendrick could not explain how he had sustained the injuries that … Wright observed, documented, and treated on the day of the incident.

Approximately two weeks before trial, [Johnson] spoke to Officer Lehman about this case, stating that he knows no one saw him with the shank in his hand and that he was looking for the loophole for the case. [Johnson] also spoke with Officer Sharp. [Johnson] stated to Officer Sharp that he heard from his attorneys that Officer Sharp had been lying about what he observed the day of the incident. [Johnson] further questioned Officer Sharp if he had seen [Johnson] stab … Kendrick or if he had seen [Johnson] with a weapon. [Johnson] told Officer Sharp, "anybody can get it at any time, to – like Freddy Krueger said, don't sleep."

Trial Court Opinion, 12/7/21, 2-4 (record citations omitted).

Ultimately, a jury found Johnson guilty of the three offenses identified, *supra*. At his initial sentencing, the court sentenced him to two to four years of incarceration for the aggravated assault charge and one-and-a-half to three years of incarceration for the weapons charge, with the simple assault charge carrying no further penalty. The sentences were ordered to run concurrent to each other, but consecutive to the time he was serving on various other dockets.

Following sentencing, Johnson filed a post-sentence motion. Approximately two weeks after this filing, the court, without any submission from the Commonwealth, amended Johnson's sentence, by way of a new order, to forty to eighty months of incarceration for the former crime and twenty to forty months for the latter, with both counts now ordered to run consecutive to one another (in addition to being consecutive to the time he was already serving in unrelated cases). The court reasoned that its original sentencing scheme represented a downward departure from the sentencing guidelines, but that it never noted, on the record, any specific reasons for deviating from these guidelines. Therefore, pursuant to 42 Pa.C.S.A. § 5505, it vacated its prior order and sentenced Johnson within the standard range of the guidelines. In effect, the new sentence was, in the aggregate, five to ten years of incarceration.

After the court modified Johnson's sentence, he filed a motion for leave to file a supplemental post-sentence motion, which was granted. Johnson then

filed a supplemental post-sentence motion, which was ultimately denied.

In response to this denial, Johnson filed a timely notice of appeal. Thereafter, the relevant parties complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925, so this appeal is ripe for review.

On appeal, Johnson presents three issues:

1. Did the trial court err in resentencing Johnson *sua sponte* by court order without giving him and his counsel an opportunity to argue his case?

2. Did the trial court err in accepting the jury verdict, which went against the weight of the evidence, specifically failing to establish that Johnson assaulted the victim with a weapon?

3. Did the trial court err in granting the Commonwealth's motion *in limine*, allowing prejudicial testimony which served no legitimate purpose?

***See*** Appellant's Brief, at 4.

In Johnson's first claim, he contends that the court should not have issued a second sentencing order that greatly increased his incarceration term without, at a minimum, him being given the opportunity to be heard. Johnson bolsters his assertion by indicating that, prior to sentencing, a court is supposed to hold a proceeding that delves into facts relevant to the sentence, gives the defendant a right to make a statement, and allows the court to hear argument from the defendant and the Commonwealth about various sentencing alternatives. ***See*** 42 Pa.C.S.A. § 9752(a)(1-3); ***see also*** Pa.R.Crim.P. 704(C)(1) (establishing that a defendant is allowed the

opportunity to make a statement on his behalf and that the parties may present information and argument relevant to sentencing). Moreover, Johnson lists several bases for sentence mitigation that his counsel adduced at the original sentencing hearing. *See* Appellant's Brief, at 14-15 (writing that Johnson had been shot at age 11 and never received counseling to deal with this incident, spent most of his life incarcerated, and was a father to a three-year-old-daughter) (citations to the sentencing hearing omitted). At that same hearing, the court favorably acknowledged Johnson's cooperation throughout the course of his trial.

Generally speaking, "a court *upon notice to the parties* may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505 (emphasis added). Johnson does not dispute that the court's modification occurred within thirty days of the issuance of the original sentencing order. Furthermore, Johnson concedes that there was no appeal from the original sentencing order that could serve to remove the lower court's jurisdiction over the matter. Finally, Johnson acknowledges that his present sentences are both within the standard range of their respective guidelines.

Despite these concessions, Johnson's brief emphasizes that the court's issuance of the present sentencing order, without any forewarning apparent in the record, left him without the opportunity to respond. As best can be

discerned from the record, Johnson was sentenced on July 19, 2021. Johnson filed a post-sentence motion on July 29, 2021. The court issued an order on August 2, 2021, which required the Commonwealth to respond to Johnson's post-sentence motion within thirty days of that order. Then, on August 11, 2021, the court issued another order that vacated the prior sentencing order and simultaneously imposed new sentences.

Even in cases where there is a clear mistake apparent in a sentencing order, the court is obligated "to give notice as required by 42 Pa.C.S.[A.] § 5505 to both the defendant and the district attorney of the proposed changes and an opportunity to respond to those changes." *Commonwealth v. Blair*, 230 A.3d 1274, 1277 (Pa. Super. 2020). "Not only is such a notice required by 42 Pa.C.S.[A.] § 5505, [but] the sentencing process must also satisfy due process, which similarly requires a notice and opportunity to respond." *Id*. (citations omitted).

As such, sentence modification may *only* happen if all parties are notified prior to the amendment taking place. *See id*. (requiring the lower court to declare its intention prior to altering a sentence). Acting in contravention of Section 5505, which explicitly requires prior notice, "is inconsistent with the accused being present at every vital stage of the criminal process." *Id*. (citation and internal quotation marks omitted). Stated succinctly, "if the sentence is modified without giving notice, it is without effect." *Id*. (citation omitted).

Here, we see nothing in the record to evidence that Johnson received prior notice of the court's desire to modify his sentence or that he had a corresponding ability to respond prior to the issuance of that order. Accordingly, we vacate Johnson's judgment of sentence and remand for resentencing so that the lower court can follow the dictates of Section 5505.

Despite our vacation of the judgment of sentence, we note that Johnson's two other issues presented warrant no relief. First, Johnson claims that the verdict was against the weight of the evidence insofar as the evidence failed to demonstrate that he assaulted the victim with a weapon.

As with all weight of the evidence claims,

> our role [as an appellate court] is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Habay*, 934 A.2d 732, 736-37 (Pa. Super. 2007) (citations omitted).

For aggravated assault, the only specific verdict Johnson challenges, the Commonwealth was required to prove, beyond a reasonable doubt, that Johnson "attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(4). Johnson admits that the testimony reflects that a weapon was found near

Johnson, but it was not uncovered on his person. Furthermore, at trial, the victim, Kendrick, denied that Johnson had used a weapon on him or had any intent to hurt him. In addition, no one testified to seeing the stabbing. As such, the testimony merely reflected he was found in the vicinity of a weapon, but nothing more.

Distilled down, Johnson avers that the Commonwealth never proved that "he acted with a specific intent to cause such injury," ***Commonwealth v. Sanders***, 627 A.2d 183, 186 (Pa. Super. 1993) (citation omitted), which he suggests is required for the offense of aggravated assault. "A person acts intentionally with respect to a material element of an offense when … it is his conscious object to engage in conduct of that nature or to cause such a result." ***Id***. (citation omitted) (alteration in original). However, "[c]riminal intent may be proved by direct or circumstantial evidence." ***Id***. (citation omitted).

The court concluded that the Commonwealth presented enough circumstantial evidence so as not to shock one's sense of justice. In effect, the Commonwealth demonstrated, beyond a reasonable doubt, that Johnson was guilty of aggravated assault because he intentionally, albeit circumstantially, injured Kendrick with a deadly weapon. We see no abuse of discretion in this determination.

The first officer on the scene, Officer Lehman, saw that "one inmate [(Kendrick)] was against the wall. The other one [(Johnson)] was … huddled into him. Like, his head was buried in his chest[.]" N.T., 4/12/21, at 20-21.

Sensing something was wrong and after calling for backup, the officers, in separating the two, observed blood on Kendrick's shirt and hands. *See id*., at 28, 44.

Although routine inspections of Johnson's cell and adjacent area had been performed that day, there were no weapons found at any point prior to the incident between Johnson and Kendrick. *See id*., at 28, 44. As Johnson was being handcuffed, one of the officers noted that there "was a shank right by [Johnson's] hand." *Id*., 55. When Kendrick received medical treatment, it was reported by a nurse that he had multiple puncture wounds and scratches over his body. *See id*., at 84-86.

While Kendrick, at trial, did not remember what had happened, stating that Johnson did not attack him, *see id*., at 95-96, 102, the officers' voluminous testimonies contradicted Kendrick's latter assertion. As cited, *supra*, the officers unambiguously recalled that Johnson and Kendrick had to be removed from one another and that, thereafter, Kendrick was bleeding and treated accordingly for, *inter alia*, stab wounds. Additionally, the officers emphasized that there were no weapons in the area prior to this altercation between Johnson and Kendrick.

As circumstantial evidence can be used to demonstrate intent, it was clearly not an abuse of discretion for the lower court to determine that there was no validity to Johnson's weight of the evidence assertion. In summary, the officers saw a skirmish between Johnson and Kendrick, recognized that

Kendrick was bleeding and required treatment from puncture wounds, and while Johnson was being handcuffed, discovered a weapon on the ground, in the form of a shank, that was close in proximity to Johnson. Under this factual backdrop, the aggravated assault verdict does not shock the conscience, and Johnson's claim fails.

In his remaining issue, Johnson believes that the lower court erred in granting the Commonwealth's motion *in limine*, which sought to allow certain statements he made to Commonwealth witnesses following jury selection in this case.

A challenge to a motion *in limine* ruling requires application of our well-settled standard of review:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa. Super. 2014) (citations and quotation marks omitted).

The first statement involved Johnson asking a correctional officer if anyone had seen him with a shank in his hand. ***See*** Motion *in Limine*, Ex. A. In addition, Johnson, to this same individual, indicated that he was trying to find a loophole for his case. ***See id***. In the second statement, which involved another correctional officer, Johnson confronted this individual, accusing her

of lying. *See id*., Ex. B. As reported, Johnson stated that the officer "said [he] stabbed [his] cellie in his sleep and [he] ain't do that shit." *Id*. Johnson then told the officer that she never saw him with a weapon or stab Kendrick. Johnson finished the conversation by remarking: "Just like Freddy Krueger said don't sleep[.]" *Id*.

Johnson acknowledges that relevant evidence is admissible, *see* Pa.R.E. 401, 402, but pursuant to Pa.R.E. § 403, contends that his statements' probative value was outweighed by the danger of unfair prejudice. Johnson believes that the statements merely implied his criminal intent, but did not act as "an admission" and "served no probative value in the Commonwealth's case." Appellant's Brief, at 23-24. While the lower court considered Johnson's statements as establishing consciousness of guilt, it "did not give a consciousness of guilt instruction."[2] *Id*., at 24.

The Commonwealth is allowed to demonstrate consciousness of guilt in cases where a defendant has attempted to intimidate or influence witnesses. *See Commonwealth v. Lark*, 543 A.2d 491, 500 (Pa. 1988) (citation omitted). Paralleling the statement attached to the motion *in limine*, the one officer testified that, just prior to trial, Johnson "made statement of that he knows nobody saw the shank in his hand and that he was looking for a loophole for the case." N.T., 4/21/21, at 31. Similarly, another officer testified

---

[2] Johnson does not explain or indicate why such an instruction was required or necessary.

that Johnson conveyed to her that she "had been lying about what [she] had [seen], and then [Johnson] questioned the fact of if [the officer] saw him actually stab Kendrick or if I saw him with a weapon." *Id*., at 46-47. Immediately thereafter, Johnson made a Freddy Krueger reference about not sleeping because anyone can "get it at any time." *Id*., at 47.

The lower court remarked in addressing Johnson's claim:

> The concern here is that the statements would be prejudicial as discussing these statements would lead the jury to believe that [Johnson] was still incarcerated. However, the trial was for charges that took place while [Johnson] was incarcerated. The jury was aware that [Johnson] had been incarcerated at the time the incident took place. Further these statements show a consciousness of guilt as they show that [Johnson] was threatening or intimidating the witnesses, the officers, for his trial.

Trial Court Opinion, 12/7/21, at 9.

We disagree with Johnson's supposition that neither statement was relevant. Clearly, by their very verbiage, Johnson's statements intended to influence or manipulate Commonwealth witnesses into either clouding the narrative of what those witnesses saw as fact witnesses to the crimes Johnson had been charged or, in the latter statement's case, could be, in part, implicitly construed as a threat. Therefore, it must be discerned whether admittance of these statements constituted unfair prejudice.

Unfair prejudice "means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighting the evidence impartially." *Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007).

- 13 -

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.

*Id.*

Although Johnson's statements were certainly harmful, other than making a few bald or cursory assertions, he has not saliently established that their contents improperly suggested a decision or prevented the jury from impartially weighing the evidence it had received. As such, when looking at the statements, both singularly and in tandem with one another, he has failed to demonstrate that he suffered *unfair* prejudice because they were admitted.

While we agree with Johnson that "[n]either statement was an admission," Appellant's Brief, at 26, given the broad discretion afforded to lower courts in making evidentiary determinations, the court's finding that he attempted to influence the Commonwealth's witnesses by making these statements was not an abuse of discretion. Accordingly, no relief is due.

Given our holding as to his first claim, as established, *supra*, we vacate the judgment of sentence and remand for proceedings consistent with Section 5505.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/11/2022