543 A.2d 1226

**COMMONWEALTH of Pennsylvania**

v.

**Augustine LODIS, Appellant.**

Superior Court of Pennsylvania.

Argued April 7, 1988.

Filed June 20, 1988.

Petition for Allowance of Appeal Denied Nov. 18, 1988.

158

Richard M. Meltzer, Philadelphia, for appellant.

Maxine J. Stotland, Assistant District Attorney, Philadelphia, for Com., appellee.

160

Before WIEAND, McEWEN and BECK, JJ.

WIEAND, Judge:

This is a direct appeal from a judgment of sentence imposed upon Augustine Lodis after a jury had found him guilty of aggravated assault[1] and possession of an instrument of crime.[2] New counsel was appointed after Lodis had been sentenced,[3] and, on appeal, Lodis alleges for the first time that trial counsel rendered ineffective assistance.

The facts of the case were summarized by the trial court as follows:

The Commonwealth presented evidence that on August 30, 1984, at approximately 7:00 P.M., the complainant, Michael Wuykiw, drove to the three hundred block of East Hunting Park Avenue in Philadelphia, as he customarily did, to allow his Doberman to run in a wooded area behind the Franklin Diner.

After about fifteen minutes, Wuykiw whistled for his dog, who returned and jumped into the car. As Wuykiw walked toward his car, the defendant, Augustine Lodis, came toward him carrying a 34″ long pipe. He shouted: "Keep your mother fucking dog out of my property or I will blow your head off and your dog's head off." (N.T. 70, September 2, 1986.) An altercation ensued, first verbal and then physical. The dog jumped from the car and Lodis struck it several times with the pipe. Wuykiw retreated to his car, entering the driver's seat, while the dog limped into the rear seat. The defendant walked back to the Elisha Webb building at 315 East Hunting Park Avenue.

The complainant started his car and began driving away. The defendant came out of the building and ran toward Wuykiw's car. The complainant stopped, fearing

1. 18 Pa.C.S. § 2702(a)(1).
2. 18 Pa.C.S. § 907(a).
3. Lodis was sentenced to serve concurrent terms of imprisonment for not less than five (5) years nor more than ten (10) years on the assault conviction and for not less than one (1) year nor more than two (2) years for possession of an instrument of crime.

that the defendant would run in front of the auto. The defendant ran up to the front passenger side of the car, thrust a gun halfway through the window and fired, striking the complainant in the neck. The dog was still in the back seat.

The complainant lost control of the car, which rolled across Hunting Park Avenue and struck another moving vehicle. Wuykiw saw Lodis run back into the Elisha Webb building.

The police arrived within minutes. After receiving information from the complainant, members of the Police Stake-Out Unit broke into the warehouse and after locating the defendant as he was coming out of a shower, placed him under arrest.

Kenneth Curry testified as a Commonwealth witness that at the time in question he was working at an Arco station across the street from 315 East Hunting Park Avenue. He saw a man leaning into a car parked on or near the Elisha Webb lot. There was a man in the driver's seat. Curry assumed that the two were talking. He looked away and about thirty seconds later heard a noise which he presumed was a backfire. He then saw the car coasting from the parking lot toward the street and a man running from the car to the Elisha Webb building. The car was then involved in a collision with another vehicle.

The defendant testified that while he was working alone inside the Elisha Webb building, which was a warehouse owned by his father, he discovered a large Doberman chasing cats. He drove the dog off with a pipe and then went outside to investigate further. He observed the complainant with the animal and warned him to keep the dog off the property. The complainant started an altercation. The Doberman jumped from the car and circled Lodis. Fearing that it was going to attack, Lodis struck it with the pipe. The complainant threatened Lodis before driving away. The defendant re-entered the warehouse and resumed his work. About ten minutes

later he heard the sound of a car pulling up. He went to an open garage door, carrying a gun for his own protection. He saw the Doberman begin to jump from the complainant's car, which was fifteen to twenty feet away. Lodis fired once at the dog for his own protection and went back into the warehouse. The car pulled away and was involved in an accident across the street. The defendant removed the bullets from the gun and stored the weapon in one of the places he customarily kept it. He did not know that the complainant had been wounded until the police entered the warehouse.

.    .    .    .    .

The police officers who arrived at the scene were told by the complainant that his assailant had run into the building at 315 East Hunting Park Avenue. A police Stake–Out Unit was called to the scene and the building was placed under surveillance. After the building was observed for over a half hour, five or more police officers broke the lock to the door of the building with a battering ram and gained entrance. All were heavily armed. They proceeded to search the warehouse, an office area and rafters above the office. The officers heard noise coming from behind a door in an apartment area, and the defendant emerged, wet, clad only in a towel. He appeared to have just taken a shower. Lodis acted surprised and made remarks indicating that he did not know why the police were there. (See N.T. 139, September 2, 1986) Detective John Walker testified that as soon as the defendant emerged from the shower room and saw the police he said: "[W]hat are you doing in here, you can't be in here, you need a warrant...." (N.T. 152). Detective Walker asked Lodis in response if he hadn't heard or seen what was going on outside, referring to blinking lights and the sound of police radios coming from vehicles which were visible and audible through a window. The defendant replied that he thought it was a traffic accident. (N.T. 153).

Detective Walker then told the defendant that there had been a shooting and that the person involved had run into the building. The defendant was placed under arrest, allowed to dress and was then taken to East Detective Division (N.T. 153–54).

The warehouse was not searched at that time and no evidence was seized.

A warrant to search the warehouse was obtained at 2:45 A.M. and Detective Walker proceeded immediately to search the premises for the handgun and ammunition. While there, he received a phone call from East Detectives informing him that the defendant wanted to show them where the gun was. Lodis was brought to the scene. He led Detective Walker to a shelf in the warehouse (N.T. 159). The handgun was found wrapped in a towel and was in an open box. Detective Walker noted that the gun was unloaded. He asked the defendant what happened to the ammunition and the defendant responded that he had dumped the ammunition before going into the building. (N.T. 159; N.T. 6, September 3, 1986). A box of .357 caliber ammunition was found by the police in the living area of the warehouse without the defendant's assistance.

Lodis contends that trial counsel was ineffective for the following reasons: (1) he failed to move pre-trial to suppress the gun and the ammunition, as well as Lodis's statements regarding the same; (2) he failed to object to questions regarding Lodis's post-arrest silence; (3) he failed to question the complaining witness about a separate civil action for the purpose of attacking the witness' credibility; and (4) he failed to request jury instructions pertaining to (a) the voluntariness of Lodis's statements to the police, and (b) the bias of the complaining witness.

The first step in reviewing an ineffectiveness of counsel issue is to determine whether there is arguable merit in the underlying claim. *Commonwealth v. Pierce*, 515 Pa. 153, 158–159, 527 A.2d 973, 975 (1987). Only when this threshold requirement is met do we proceed to deter-

mine whether counsel's strategy was unreasonable and whether the alleged error resulted in prejudice to appellant. *Id.* In the instant case, we find that appellant's contentions lack arguable merit. Therefore, the judgment of sentence will be affirmed.

■ Appellant contends that his statements regarding the location of the gun and his disposition of the ammunition were subject to suppression (1) because he had not been advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (2) because he had not been arraigned within six (6) hours after arrest as required by *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977).[4] Because the gun and ammunition were discovered following his statements, he argues, they were fruits of the poisoned tree and were also subject to suppression. We disagree.

Although appellant has argued that trial counsel was ineffective for failing to move pre-trial to suppress the ammunition, the record fails to reveal any causal connection between appellant's statements and the finding of the ammunition by the police. Appellant's statement was that he had dumped the ammunition. The police found the ammunition as a result of an independent search. The validity of this search has not been questioned. Therefore, there was no causal connection between appellant's statement and the finding of the ammunition by the police.

■ The police had arrived at appellant's warehouse armed with a valid search warrant and were in the process of executing the warrant when appellant volunteered to direct them to the weapon. The general rule is that evidence which would have been found by independent means is not

---

**4.** The *Davenport* rule was modified by *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987). As the rule now stands, statements made within six hours after arrest are admissible against a defendant even where arraignment is unduly delayed. Only those statements made after the six hour period and prior to arraignment will now be excluded. This modification has no application to the instant case, however, since the statements at issue were made by appellant after having been in custody for a period of seven hours.

subject to suppression merely because the finding was expedited by illegal police activity. In *Commonwealth v. Brown*, 470 Pa. 274, 368 A.2d 626 (1976), the Supreme Court said:

> Where the initial taint did not affect the reliability of the evidence, the only basis for excluding relevant testimony is to discourage unlawful police conduct by preventing the exploitation by police of their improper acts. However, where the prosecution can establish that the challenged evidence would have come to its attention from an independent source free of the taint, there is not the type of exploitation of the illegality that requires the imposition of the rule of exclusion. Restated, where the evidence obtained as the result of illegal police activity would have been discovered in the course of a lawfully conducted investigation, no purpose is served in applying the exclusionary rule.

*Id.*, 470 Pa. at 284, 368 A.2d at 631 (citation and footnote omitted). Although appellant's statements in the instant case may have expedited the discovery of the gun, it seems certain that the gun would have been discovered independently thereof by police who had a warrant to search the very warehouse in which the gun was found. Under these circumstances, the gun was not subject to suppression either because appellant's volunteered assistance had come seven hours after arrest or because it had not been preceded by *Miranda* warnings. Therefore, appellant's present argument lacks substantive merit. Counsel will not be deemed ineffective for failing to file a meritless pre-trial motion. See: *Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 512 A.2d 1199 (1986), *appeal denied*, 515 Pa. 573, 527 A.2d 535 (1987).

It does not appear, moreover, that appellant's statements to the police were inculpatory. At trial, appellant's defense was that he had had a gun which he had used for his own protection. He testified that on the date of the alleged offense he had shot at Wuykiw's dog to protect himself against the dog and that he had been unaware that

accidentally a bullet had struck Wuykiw. After he had used the gun, appellant testified, he had unloaded it for safety reasons, had wrapped it in a towel, and had stored it in his usual manner on a shelf in the warehouse. In support of this defense, appellant's trial counsel attempted to show by evidence and argued to the jury that appellant had been cooperative with the police. In part, he relied upon the statements which Lodis had made to the police. This was a reasonable strategy intended to serve appellant's interests, and appellant does not contend that counsel was ineffective for adopting such a strategy. Under these circumstances, it cannot be said that appellant was prejudiced by the Commonwealth's references to appellant's statements regarding the location of the gun and the ammunition.

■ Appellant next argues that counsel was ineffective because he failed to object to the following re-direct examination of the arresting officer by the prosecuting attorney:

Q: Counsel asked you whether the defendant was cooperative with you when you arrested the defendant and whether or not he was cooperative when he showed you where the gun was located. Do you remember that?

A: I do.

Q: He asked you whether or not he knew whether someone had been struck by a bullet.

A: No.

Q: At any time at all did he mention anything to you at firing at a dog or man or anything else?

A: No.

This testimony, appellant argues, was an attempt by the Commonwealth to exploit his exercise of the Fifth Amendment privilege against self-incrimination in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). However, appellant did not exercise his Fifth Amendment right. On the contrary, he freely made statements to the police and apparently attempted to cooperate with them during their investigation. Under these

circumstances, it was not improper for the Commonwealth to challenge the credibility of appellant's defense by identifying inconsistencies between his trial testimony and the statements which he had made to police during their investigation. This was not an attempt to exploit any exercise by appellant of his Fifth Amendment privilege against self-incrimination. See: *Commonwealth v. Beavers*, 492 Pa. 522, 424 A.2d 1313 (1981); *Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985), *overruled on other grounds, Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987); *Commonwealth v. Bunting*, 284 Pa. Super. 444, 426 A.2d 130 (1981); *Commonwealth v. Humphreys*, 267 Pa.Super. 318, 406 A.2d 1060 (1979), *overruled on other grounds, Commonwealth v. Burchard*, 349 Pa. Super. 456, 503 A.2d 936, *appeal denied, Commonwealth v. Van Slochem*, 514 Pa. 642, 523 A.2d 1131 (1986). Appellant's trial counsel was not ineffective for failing to object to this examination of the arresting officer.

■ Appellant next contends that trial counsel was constitutionally ineffective because he failed to cross-examine the complaining witness about the civil action which he had commenced against appellant for the purpose of establishing bias or a financial motive for fabricating testimony in the criminal case. Whether to inject the civil action and the complaining witness' claim for personal injuries—with all that such a claim entailed—into the criminal action was a strategic decision to be made by counsel. The civil action was marginally relevant at best, and the effect which such evidence would have had on the jury in the criminal case was for trial counsel to determine. Whether cross-examination about the civil action would have been harmful or helpful to the defense is not the type of issue about which a court will substitute its judgment for that of counsel. It was a strategic decision, purely and simply, and not one for which trial counsel will be found ineffective.

■ Finally, appellant contends that trial counsel was ineffective because he failed to request jury instructions pertaining to (1) the possible involuntariness of his state-

ments to the police; and (2) the possible bias of the complaining witness because of the civil action. There is no merit in this contention. There was no evidence to support a finding that appellant's statements had been made involuntarily and no evidence that a civil action had been brought for damages. Jury instructions on these issues, therefore, were not warranted. *Commonwealth v. Osborne*, 433 Pa. 297, 249 A.2d 330 (1969). Counsel will not be deemed ineffective for failing to make a meritless request.

The judgment of sentence is affirmed.