J-S44016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW RUSSELL SMITH | : | |
| | : | |
| Appellant | : | No. 833 MDA 2020 |

Appeal from the Judgment of Sentence Entered October 29, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0002063-2017

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 8, 2021**

Appellant Matthew Russell Smith appeals *nunc pro tunc* from the judgment of sentence imposed after a jury found him guilty of one count each of delivery of a noncontrolled substance, possession with intent to deliver a noncontrolled substance, and criminal use of a communications facility.[1] Appellant claims that the trial court erred in denying his motion to suppress identification evidence and exclude evidence obtained from his cell phone.  We affirm.

The record establishes the following background to Appellant's convictions.  On December 6, 2017, Pennsylvania State Police Trooper Tyler Morse worked with an informant to arrange a controlled purchase of crack cocaine from an individual known as "Mike."  N.T. Omnibus Mot. Hr'g, 6/18/18,

---

[1] 35 P.S. § 780-113(a)(35) and 18 Pa.C.S. § 7512(a) respectively.

at 26. The informant called a phone number ending in 6609 and spoke to an unidentified male in order to schedule a purchase of $200 of "hard," or crack cocaine. N.T. Trial, 8/8/18, at 29; N.T. Omnibus Mot. Hr'g at 26.

Trooper Morse drove the informant to the scheduled meeting location. Once there, the informant called the 6609 number and received additional instructions to meet in front of a nearby bar. The trooper drove the informant to a location near the bar and provided the informant with $200 in prerecorded currency. The informant exited the trooper's vehicle and walked to the meeting location. The trooper and his undercover surveillance team lost sight of the informant. According to Trooper Morse, the informant called him several minutes later and indicated that "it[ was not] Mike today" and that she purchased drugs from "a light-skinned black male, wearing a blue Gap hooded sweatshirt and blue sweatpants." N.T. Omnibus Mot. Hr'g at 27. Trooper Morse relayed the description to his backup.

Pennsylvania State Police Trooper Daniel Denucci observed Appellant within one minute of receiving Trooper Morse's description. Appellant, a white male, was wearing a blue running suit that matched the Trooper Moore's description. Trooper Denucci stated that Appellant started running as soon as he saw the trooper's unmarked vehicle. Trooper Denucci pursued Appellant in his vehicle to a nearby residence. The trooper then exited his vehicle and arrested Appellant as Appellant attempted to enter a residence. Trooper Denucci searched Appellant and recovered $180 of the prerecorded buy money and an iPhone. Further investigation revealed that the phone taken

from Appellant was not listed as the 6609 phone number that the informant used to arrange the purchase.

After advising Appellant of his **Miranda** rights, Trooper Morse interrogated Appellant. During the interrogation, the trooper observed that Appellant's phone received several calls. Specifically, the trooper noticed that the face of the phone displayed the incoming calls as Mike. Appellant denied involvement in the sale asserting, in part, that he saw two people drop money on the street and he picked it up. Trooper Morse filed a criminal complaint against Appellant on December 6, 2017.

The following day, Trooper Morse presented the informant with a photo array. The informant identified Appellant's picture as the person who sold her the cocaine within thirty seconds. The informant later testified she had seen Appellant twenty to thirty times before the present incident.

Appellant's trial counsel, Andrea Pulizzi, Esq. (trial counsel) entered her appearance on December 29, 2017. Appellant filed an omnibus pretrial motion seeking the suppression of the informant's identification. Following a hearing, the suppression court, with the Honorable Marc F. Lovecchio presiding, denied the motion to suppress the identification. The trial court scheduled a jury trial for August 8, 2018.

The record suggests that on August 3, 2018, Trooper Morse obtained a search warrant for Appellant's cell phone. Trooper Morse executed the warrant and took pictures of the phone's contact information and call log. The pictures showed contact information for Mike using the 6609 number and that

Appellant received incoming calls consistent with the phone calls made by the informant to arrange the purchase.

Immediately before trial on August 8, 2018, Appellant's trial counsel moved to preclude the Commonwealth from admitting evidence from Appellant's phone. Following arguments on the motion, the trial court, with the Honorable Dudley N. Anderson presiding,[2] construed Appellant's motion as a motion to exclude evidence due to a discovery violation and denied it. The trial court offered Appellant a continuance, which Appellant rejected. Appellant did not request a separate suppression hearing.

At trial, the Commonwealth called the informant, who testified against Appellant and identified him in court, and Trooper Morse, among other witnesses. Trooper Morse testified using the photographs of Appellant's phone but did not inform the jury that he observed Mike calling during Appellant's interrogation. The jury found Appellant guilty of all charges.

On October 29, 2018, the trial court sentenced Appellant to serve an aggregate eighteen to thirty-six months' imprisonment. Appellant's trial counsel did not file a direct appeal.

Appellant, through present counsel, filed a Post Conviction Relief Act (PCRA) petition seeking reinstatement of his direct appeal rights, which President Judge Nancy L. Butts granted on May 29, 2020. Appellant filed a

---

[2] Judge Anderson also presided over sentencing.

- 4 -

notice of appeal *nunc pro tunc* and complied with President Judge Butts' order to file and serve a Pa.R.A.P. 1925(b) statement.

President Judge Butts filed a Rule 1925(a) opinion that incorporated the suppression court's findings of fact and conclusions of law in support of denying Appellant's motion to suppress the informant's identification and the trial court's ruling on Appellant's pretrial motion. The Rule 1925(a) opinion also addressed Appellant's argument that he was entitled to suppress the information from his cell phone and concluded no relief was due under Pa.R.Crim.P. 573. Moreover, the Rule 1925(a) opinion noted that "even if trial counsel filed a motion to suppress the cellphone evidence, the motion would have been meritless." Rule 1925(a) Op., 6/17/20, at 3.

Appellant presents the following questions for review:

1. Did the suppression court err in denying Appellant's motion to suppress identification when the . . . informant described him as a light-skinned black male?

2. Did the [trial] court abuse its discretion in denying Appellant's motion to exclude cell phone evidence captured pursuant to a search warrant issued a few days prior to trial?

Appellant's Brief at 6 (some formatting altered).

## 1. Identification Evidence

Appellant contends that the suppression court erred in denying his motion to suppress the informant's identification of him from a photo array. Appellant emphasizes that the informant initially described the person who sold her the drugs as a light-skinned black male, but then stated she was not

certain of the individual's race. *Id.* at 14. Appellant further argues that he was the only individual in the array that appeared bi-racial, while the remaining individuals appeared Caucasian. *Id.* at 13-14. Additionally, Appellant asserts that the informant identified him based on a brief exchange. *Id.* at 15.

The Commonwealth responds that the suppression court properly denied Appellant's relief because the array was not suggestive. Commonwealth's Brief at 10-11. The Commonwealth further notes that there was no basis to exclude the informant's in-court identification of Appellant. *Id.* at 12-13.

This Court recently summarized the principles governing our review:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.
>
> A court must assess the reliability of an out-of-court identification by examining the totality of the circumstances. A pre-trial identification will not be suppressed as violative of due process

unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The reliability of an out-of-court identification is determined by considering the totality of the circumstances, including, *inter alia*, the following specific factors: (1) the witness' ability to observe the criminal act; (2) the accuracy of the photo array selection and other descriptions; (3) the lapse of time between the act and any line-up; and (4) any failure to identify the defendant on prior occasions. The purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted.

Additionally, even if an out-of-court identification is suggestive, an in-court identification is admissible if there exists an independent basis for the identification. An independent basis is established when the in-court identification resulted from the criminal act and not the suggestive identification procedure. To determine if an identification resulted from the criminal act and, therefore, has an independent basis, the trial court must consider the following factors:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

***Commonwealth v. Russell***, 209 A.3d 419, 430-31 (Pa. Super. 2019) (citations omitted and formatting altered), *appeal denied*, 218 A.3d 862 (Pa. 2019).

Instantly, the suppression court addressed Appellant's claim as follows:

> Despite [Appellant]'s argument to the contrary, there is no evidence that the photographs in the array or the procedures utilized in presenting it to [the informant] were unduly suggestive.

\* \* \*

- 7 -

The totality of the circumstances do not demonstrate that the procedure was so impermissibly suggestive as to give rise to any likelihood of misidentification, let alone a substantial likelihood of such. The array was comprised by the random selection of photographs from a computer. While Trooper Morse selected what photographs would be actually utilized in the array, all of the utilized photographs were similar to [Appellant]'s appearance in terms of skin color, facial hair, hairstyle, nose and eyes. The court's view of the entirety of the facial characteristics of the individuals taken together does not lead the court to believe that there was any suggestiveness whatsoever. While [Appellant] argues that he is the only mixed [race] individual in the array, such claim belies his statement to Trooper Morse that he was white. Moreover, his picture is substantially similar in skin tone to the other individuals in the photo array. He does not, as [Appellant] claims, appear to be the only mixed [race] individual in the array.

As well, there is nothing whatsoever suggestive about how Trooper Morse presented the array. He did not point to any particular individuals, he did not say anything that would point to a particular individual, and he did not suggest that the individual involved was in fact in the photograph. Moreover, [the informant] identified [Appellant] immediately, leading the court to conclude that she was not pressured or influenced by Trooper Morse in any manner whatsoever.

Suppression Ct. Op. & Order, 6/27/18, at 4-5 (citations omitted).

The suppression court further opined:

Even assuming that there may have been some suggestive pretrial identification which is not the case, the court concludes that any in-court identification of [Appellant] by [the informant] clearly had an origin independent of any suggestive pretrial investigation. [The informant] was easily able to identify [Appellant], who she had purchased controlled substances from in the recent past twenty to thirty times. She knew who [Appellant] was and she immediately recognized him once the photo array was presented to her. Furthermore, during the hearing in this matter, she clearly identified [Appellant] and indicated that her basis for identifying [Appellant] was that he was the one who sold her the drugs (non-controlled substances) on the date in question and he was the one who had sold her drugs countless times in the prior months.

- 8 -

*Id.* at 6.

We have reviewed the evidence presented by the Commonwealth, as well as the photographic array, and as much of Appellant's evidence that was uncontradicted in the suppression record. *See Russell*, 209 A.3d at 430-31. We conclude that the record supports the suppression court's findings of fact and its legal conclusions rejecting Appellant's claim that the identification procedures were overly suggestive. *See id.*; *see also* Suppression Ct. Op. & Order. at 4-6. Similarly, notwithstanding the quick nature transaction on this occasion and the possibility that the informant misidentified Appellant's race, we agree that that the informant had an independent basis for her in-court identification of Appellant. *See Russell*, 209 A.3d at 430-431; *see also* Suppression Ct. Op. & Order at 6. Accordingly, Appellant's challenge to the suppression court's rulings lack merit.

### 2. Evidence from Appellant's Phone

Appellant next challenges the admission of evidence from his cell phone. By way of background to Appellant's challenges to the cell phone evidence, we reiterate that trial counsel argued this issue when litigating the motion to preclude the Commonwealth from presenting evidence. On the day of trial, the trial court heard arguments on the motion. Appellant's trial counsel asserted:

> When [Appellant] was arrested. On the date of his arrest they noticed on his cell phone a Mike was calling, which was the same name of the target, which they had been going after that day with the [the informant]. Shortly after the preliminary hearing, I filed a request for discovery. I received discovery, I filed a motion to

suppress some other issues. I never received this [referring to the results of the search warrant] until basically the eve of trial.

\* \* \*

[T]hey never applied for the search warrant until last Friday, which was approximately five days before trial. They had that phone in their possession and the reason for going through it back on December 6th. I -- I'm quite unclear as to why they couldn't have conducted this search back on December giving me the discovery with the other discovery so I could have included this possible suppression motion with my other motions. I mean, full -- it's clear that they cannot look at the phone, they can't go through the call logs, they can't use anything in that phone without a search warrant.

\* \* \*

I think he [Trooper Morse] needed a search warrant to use anything that he saw on that phone. He had no right to even look at the phone when it was ringing until he had a search warrant.

N.T. Trial at 4-6.

Following further exchanges between Appellant's trial counsel and the trial court, the trial court asserted that it did not believe Detective Morse needed a warrant to observe the incoming calls during Appellant's interrogation. *Id.* at 7. The trial court also indicated that Appellant could have sought suppression of evidence that Trooper Morse observed Mike calling during the interrogation. *Id.* at 8, 17-18.

During its response, the Commonwealth cited Pa.R.Crim.P. 573 and

***Commonwealth v. Belani***, 101 A.3d 1156 (Pa. Super. 2014), arguing:

[I]f there is a remedy here -- and we don't think there has been any violation, we don't think that defense suffered any prejudice other than this evidence intends to make [Appellant] more guilty. If there has been a violation here and the -- and they really want to pursue this -- and I can tell them right now, that Mike that we

- 10 -

believe is the caller is in the Lycoming County Prison . . . . If [Appellant] wants to interview him, if [Appellant] wants to argue the suppression motion, we can do that right now. The trooper's here. Or at the very most, [Appellant] is entitled to request a continuance. We will not oppose it, but outright, exclusion of the evidence is --[interruption].

*Id.* at 12-14.

The trial court ultimately ruled:

Look, I don't like what happened. I -- I sympathize with both you [trial counsel] and [Appellant] in the -- in the timing on this and there is an unfairness that absolutely occurs. Nobody will convince me differently. The exclusion of this type of evidence is an extraordinary form of relief and I believe that the Commonwealth, although, it -- I agree with you, it could have been done so much better that -- that the Commonwealth is on all fours with it and therefore, I'm not going to exclude this evidence.

*Id.* at 15-16. The trial court offered Appellant a continuance.

As noted above, Appellant's trial counsel elected not to accept a continuance. *Id.* at 16. Additionally, trial counsel did not request a suppression hearing to consider Appellant's arguments that (1) Trooper Morse's observations of Appellant's phone during the interrogation constituted a search requiring a search warrant, and (2) the search warrant was based on Trooper Morse's observations during the interrogation.[3] *See id.* at 9, 16.

On appeal, Appellant argues the trial court should have excluded the call logs indicating that Appellant received several calls from the 6609 phone

_____

[3] We collectively refer to Trooper Morse's observations of Appellant's phone during the interrogation and the call logs obtained pursuant to the search warrant as the "cell phone evidence."

- 11 -

number shortly before the sale to the informant on three grounds. Appellant's Brief at 17-25. First, Appellant cites principles governing motions *in limine* to argue that the evidence was prejudicial in light of the late decision to obtain a search warrant. *Id.* at 17. Second, Appellant contends that Trooper Morse's observation of the incoming call information during the interrogation on December 6, 2017, constituted a search in violation of *Riley v. California*, 573 U.S. 373 (2014), and *Commonwealth v. Fulton*, 179 A.3d 475 (Pa. 2018). *Id.* at 18-22. Third, Appellant contends that there is clear record support for finding trial counsel ineffective for not preserving suppression issues or requesting a continuance. *Id.* at 22-25.

The Commonwealth responds that Appellant fails to establish prejudice resulting from the late application for a search warrant and discovery of the information obtained from Appellant's phone shortly before trial. Commonwealth's Brief at 14-17. The Commonwealth discusses *Belani* in support of its contention that the trial court properly refused to exclude the evidence. *Id.* at 15-16. Second, the Commonwealth contends that *Fulton* and *Riley* are distinguishable and that Trooper Morse's observation that Mike called during the interrogation did not constitute a search requiring a warrant. *Id.* at 17-23. Third, the Commonwealth contends that Appellant's claim of ineffectiveness must fail because the underlying suppression claim lacked merit and any error in admitting the evidence was harmless. *Id.* at 24-27.

We separately address the arguments that (a) the trial court should have excluded the cell phone evidence based on delay, (b) he was entitled to

suppression of the cell phone evidence, and (c) he is entitled to relief based on trial counsel's ineffectiveness.

### (a) Delay Concerning the Search Warrant

Pennsylvania Rule of Criminal Procedure 573 provides,[4] in part, as follows:

**(B) Disclosure by the Commonwealth.**

*(1) Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\* \* \*

---

[4] We acknowledge that Appellant refers to the standard of governing a motion *in limine* to discuss prejudice and does not discuss Pa.R.Crim.P. 573. ***See*** Appellant's Brief at 17. While this Court has indicated that a motion *in limine* is similar to ruling on a motion to suppress evidence, the distinction between the two is significant, because an evidentiary abuse of discretion standard applies to a motion *in limine*. ***See Commonwealth v. Zugay***, 745 A.2d 639, 645 (Pa. Super. 2000). Here, Appellant's claims of prejudice do not concern the prejudice standards of an evidentiary ruling, although this Court may consider whether the admission of evidence is harmless. ***See Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013) (noting that "evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact[,]" but noting that where the admission of evidence is erroneous the error may be deemed harmless (citation omitted)). Instead, Appellant argues prejudice in light of the late disclosure of evidence and the Commonwealth's lack of diligence in its prosecution, which more directly implicates the due process standards of prejudice embodied in Rule 573. ***See*** Appellant's Brief at 17 (noting that "the Commonwealth provided no reasonable explanation for why the search warrant was not executed earlier").

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence

\* \* \*

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1)(f), (D), (E).

The purpose of the discovery rules is to prevent a trial by ambush that violates a defendant's right to due process. *Commonwealth v. Ulen*, 650 A.2d 416, 419 (Pa. 1994). If the Commonwealth commits a discovery violation, "[t]he trial court has broad discretion in choosing the appropriate remedy . . . ." *Commonwealth v. Brown*, 200 A.3d 986, 993 (Pa. Super. 2018) (citation omitted). However, such "discretion is not unfettered." *Commonwealth v. Smith*, 955 A.2d 391, 395 (Pa. Super. 2008) (*en banc*) (citation omitted). This Court has suggested that in most cases, "[a] continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." *Id.* (citation omitted).

In **Belani**, the defendants were arrested in 2009, but the Commonwealth did not begin to seek DNA testing until 2012, approximately two months before a scheduled trial date listed as "must be tried." **Belani**, 101 A.3d at 1158. The trial court ultimately granted a continuance of trial, and the Commonwealth provided the DNA reports to the defense three days before the rescheduled trial date. **Id.** 1158-59. The defense moved to preclude the Commonwealth from presenting the DNA evidence. The trial court in that case granted the defendants' motion. **Id.** This Court reversed. **Id.** at 1163.

The **Belani** Court noted that the trial court essentially excluded the evidence because "if the Commonwealth had sought testing earlier, it would have received its expert's report sooner" and the defense did not have time to obtain its own expert. **Id.** at 1159-60. This Court rejected that reasoning, noting that the defense did not object when the Commonwealth obtained a court order in 2012 to have the defendants submit to DNA swabs, the Commonwealth had explained in delays in testing in 2012, and the Commonwealth introduced evidence that it attempted to expedite the analysis. **Id.** at 1161-63. The Commonwealth further noted that the prosecutor was assigned the case in 2012 and did not know why the former prosecutor had not requested DNA testing. **Id.** at 1163.

The **Belani** Court concluded:

> [T]he trial court's order excluding the DNA evidence pertaining to [the defendants] must be reversed. Pa.R.Crim.P. 573 lacks any provision authorizing the exclusion of evidence and does not

- 15 -

require that the Commonwealth perform scientific testing in a specified time frame. Further, the proper remedy for "late" disclosure should have been authorization of a defense continuance; alas, none was requested.

*Id.* at 1163.

Following our review of the record and the relevant law, we conclude that the trial court did not abuse its discretion. The trial court acknowledged that the Commonwealth's delay in seeking a search warrant for Appellant's resulted in an "unfair" situation and that the Commonwealth could "do better." Nevertheless, relying on **Belani**, the court concluded that the lateness of obtaining the report would warrant a continuance, rather than the more extraordinary remedy of excluding the evidence. As the record supports the trial court's findings and the court's determination of a possible remedy were both reasonable and supported by case law, we conclude Appellant's first argument to exclude the cell phone evidence fails.

### (b) Suppression

It is well settled that to preserve a suppression claim, a defendant must "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D); **cf. Commonwealth v. Carter**, 234 A.3d 729, 734 (Pa. Super. 2020). It then becomes the burden of the Commonwealth to establish that the challenged evidence was not obtained in violation of the defendant's rights at a hearing. Pa.R.Crim.P. 581(H); **cf. In re L.J.**, 79 A.3d 1073, 1086 (Pa. 2013). As our Supreme Court held, the scope appellate review of a

suppression ruling is generally limited to the record developed at a suppression hearing. **L.J.**, 79 A.3d at 1085.

Instantly, at the hearing on his motion to exclude, Appellant argued that the cell phone evidence generally should be suppressed when discussing his motion to exclude the evidence. We acknowledge that the trial court expressed considerable doubt as to whether Trooper Morse's observations of Appellant's phone during the interrogation required a warrant and did not expressly state that Appellant could seek suppression of the search warrant for the contents of the phone. Nonetheless, despite the Commonwealth's willingness to proceed to a suppression hearing, Appellant did not request one. Therefore, the trial court did not expressly rule on Appellant's present suppression issue, and the record contains no evidence on which to review Appellant's suppression claim.[5]

Following our review, we conclude Appellant's failure to insist upon a hearing deprived the Commonwealth with the opportunity to carry its burden of establishing that this evidence was not obtained in violation of his rights. **See** Pa.R.Crim.P. 581(H); **L.J.**, 79 A.3d at 1086. Accordingly, Appellant's claim that the trial court erred by not suppressing the cell phone evidence merits is waived for the purpose of this appeal.

---

[5] For example, although the Commonwealth included a copy of Trooper Morse's affidavit of probable cause as an attachment to its brief, the record does not contain the application for the search warrant nor the trooper's affidavit of probable cause. Moreover, as noted below, Appellant does not set forth any arguments based on the affidavit of probable cause.

## (c) Ineffectiveness

Apparently recognizing that trial counsel failed to preserve his suppression claim before the trial court, Appellant also raises a claim of ineffective assistance of counsel in this appeal.

Generally, a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal. *See Commonwealth v. Holmes*, 79 A.3d 562, 577-80 (Pa. 2013). Instead, such claims are to be deferred to PCRA review. *Id.* However, our Supreme Court has recognized three exceptions to the general rule. In *Holmes*, the Supreme Court held that a trial court has discretion to address ineffectiveness claims on direct review in cases where (1) there are extraordinary circumstances in which trial counsel's "ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice;" or (2) "there is good cause shown" and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review of his conviction and sentence. *Holmes*, 79 A.3d at 563-64. Our Supreme Court has adopted a third exception, which requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." *Commonwealth v. Delgros*, 183 A.3d 352, 361 (Pa. 2018).

Instantly, we note that at trial, Trooper Morse did not testify regarding his observations of the incoming calls during Appellant's interrogation. Therefore, standing alone, Appellant's ineffectiveness claim concerning the

- 18 -

suppression of those observations is not meritorious as to require immediate review in this direct appeal. *See Holmes*, 79 A.3d at 563-64.

We acknowledge that Appellant further asserts that trial counsel was ineffective for failing to challenge the search warrant that Trooper Morse obtained before trial. *See* Appellant's Brief at 24. We also note that the Commonwealth does not dispute that the affidavit of probable cause included a reference to the trooper's observations of Appellant's cell phone during the interrogation. *See* Commonwealth's Brief at 19-20, 19 n.7. Nonetheless, Appellant has failed to develop any argument that the asserted taint of Trooper's observation invalidated the search warrant constitutes a fruit of a poisonous tree. *See* Appellant's Brief at 24 (noting only that "actual prejudice resulted from [trial] counsel's failure to act because it resulted in the issuance of a search warrant for the phone"). *But see Commonwealth v. Katona*, 240 A.3d 463, 483 (Pa. 2020) (reviewing affidavit of probable cause to determine whether the magistrate had probable cause to issue the warrant when it was stripped of references to allegedly improper recordings); *Commonwealth v. Shabezz*, 166 A.3d 278, 290 (Pa. 2017) (noting that "[e]vidence constitutes fruit of the poisonous tree, and must be suppressed, if it was obtained by 'exploitation' of the illegality, **and so long as the taint of that illegality has not been purged**" (citation omitted and emphasis added)); *Commonwealth v. Lodis*, 543 A.2d 1226, 1230 (Pa. Super. 1988) (rejecting an ineffectiveness claim for failure to seek suppression of evidence because the police would have discovered the evidence independently).

Therefore, we are constrained to conclude that Appellant has not established extraordinary circumstances warranting consideration of his ineffectiveness claims in this direct appeal. **See Holmes**, 79 A.3d at 563-64.

However, even if this Court were to consider Appellant's ineffectiveness claims, he has not established a basis for relief. It is well settled that on direct appeal, as in a collateral proceeding, a defendant must still carry his burden of proving his claim of ineffectiveness. Specifically, a defendant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Turetsky**, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Id.** (citation omitted); **see also Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009). "Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner[']s burden to prove that counsel was ineffective." **Commonwealth v. Sneed**, 45 A.3d 1096, 1106 (Pa. 2012) (citation omitted and some formatting altered). Moreover, "[a] failure to satisfy any prong of the ineffectiveness test

requires rejection of the claim of ineffectiveness." ***Daniels***, 963 A.2d at 419 (citation omitted).

Instantly, aside from boilerplate assertions that the cell phone evidence "clearly contributed to the verdict" by connecting him to Mike and the informant, Appellant fails to establish prejudice by showing that the trial's outcome would have been different. ***See*** Appellant's Brief at 24-25. For example, Appellant fails to discuss the trial evidence, which included the informant's unwavering in-court identification of Appellant as the individual who sold her the drugs, the informant's testimony that she was in continuous contact with an unknown male by phone immediately before the purchase, and Appellant's possession of the prerecorded buy money. Further, as discussed above, Appellant does not discuss whether a court would have upheld the search warrant if the allegedly improper reference to Trooper Morse's observations were stricken from the affidavit of probable cause. ***Cf. Katona,*** 240 A.3d at 483. Therefore, because Appellant has failed to establish prejudice resulting from his ineffectiveness claims, no relief would be due. ***See Sneed***, 45 A.3d at 1106; ***Daniels***, 963 A.2d at 419.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/08/2021